UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON



| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | No. **3:18 cr 186** | |
| | : | | |
| Plaintiff, | : | I N D I C T M E N T | |
| | : | | THOMAS M. ROSE |
| v. | : | 18 U.S.C. § 1341 | |
| | : | 18 U.S.C. § 1343 | |
| BRIAN HIGGINS, | : | 18 U.S.C. § 2 | |
| | : | | |
| Defendant. | : | | |

The Grand Jury charges:

<u>COUNTS ONE THROUGH THREE</u>

[18 U.S.C. §§ 1341 and 2]

I.  <u>INTRODUCTION</u>

At all times relevant to this Indictment:

1.  Defendant **BRIAN HIGGINS** was a businessman in the greater Dayton, Ohio metropolitan area.  Throughout that time, defendant **BRIAN HIGGINS** lived at, and was one of the titled owners of, 7240 Meeker Creek Drive, Dayton, Ohio (hereinafter "Meeker Residence"), a private, one-story home with over 8,000 square feet of living space.  Defendant **BRIAN HIGGINS** co-owned the Meeker Residence with an individual identified herein by the initials C.H.  By at least summer 2014, however, C.H. did not live at the Meeker Residence.

2.    Nationstar Mortgage, LLC, (hereinafter "Nationstar") was a company headquartered in Texas that originated and serviced mortgages for customers throughout the United States. Nationstar held a legal interest in the Meeker Residence.

3.    Assurant, through its related entity Standard Guaranty Insurance Company, (collectively, "Assurant") was a specialized insurance business that operated in various states, including Ohio.  Assurant provided homeowners insurance coverage on the Meeker Residence for Nationstar and C.H.

II.   THE SCHEME TO DEFRAUD AND ITS EXECUTION

4.    Between a beginning date unknown, but at least by in or around August 2014, and continuing through in or around February 2015, in the Southern District of Ohio, defendant **BRIAN HIGGINS** knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud Assurant and to obtain money and property owned by and under the custody and control of Assurant, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through a fraudulent insurance scheme.

5.    Defendant **BRIAN HIGGINS** devised this fraudulent insurance scheme to operate, and the fraudulent insurance scheme

did operate, as follows:

      a.    During July 2014, while defendant **BRIAN HIGGINS** resided at the Meeker Residence, the property sustained significant water damage from a leak in an approximately 600 gallon fish tank. Around the time of this incident, various financial institutions, including Nationstar, had joined foreclosure proceedings against the Meeker Residence. Despite the pendency of this litigation, Morningstar obtained for its benefit and that of C.H. homeowners insurance on the Meeker Residence.

      b.    In or around August 2014, defendant **BRIAN HIGGINS** submitted a claim in the name of C.H. to Assurant concerning the water damage. As part of the claim's process, Assurant required that the claimant submit true and accurate information to it, concerning, among other things: the cost of repairs as well as bona fide invoices documenting actual repair work performed, or expected to be performed, on the residence. Based on the claimant's tacit representation concerning the validity of this paperwork -- including, among other things, bona fide invoices and repair cost estimates -- Assurant issued funds ultimately destined for, among others, the vendor who performed the purported repair work on the property.

c.    Rather than submitting bona fide, accurate invoices and other documentation concerning repairs performed on the Meeker Residence, defendant **BRIAN HIGGINS** created and caused to be created false, fraudulent, and fictitious paperwork that materially misrepresented the repair work performed on this property.  Defendant **BRIAN HIGGINS** submitted and then caused to be submitted these false, fraudulent, and fictitious documents. Defendant **BRIAN HIGGINS** also engaged in conversations with Assurant in which he materially misrepresented and fraudulently omitted material facts concerning, among other things, the status of work at the Meeker Residence.  In doing so, defendant **BRIAN HIGGINS** intended for Assurant to issue funds that he then planned to divert for his own personal benefit rather than repairing the Meeker Residence as represented.

d.    Based on defendant **BRIAN HIGGINS'** false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, Assurant issued funds, and sustained losses, totaling over one hundred thousand dollars.

III. <u>THE MAILINGS</u>

6.   On or about the dates listed below, in the Southern District of Ohio, defendant **BRIAN HIGGINS**, for the purpose of carrying out the above-described scheme to defraud, caused the items described below to be deposited and to be sent and delivered by the United States Postal Service as well as private and commercial interstate carriers:

| <u>COUNT</u> | <u>DATE</u> | <u>MAILING</u> |
|---|---|---|
| ONE | 8/15/2014 | Letter from Assurant addressed to C.H. at the Meeker Residence |
| TWO | 9/10/2014 | Check totaling $14,666.89 to a company identified herein by the initials U.D. |
| THREE | 2/4/2015 | Letter from Assurant addressed to defendant **BRIAN HIGGINS** at the Meeker Residence |

All in violation of Title 18, United States Code, Sections 1341 and 2.

<u>COUNT FOUR</u>

[18 U.S.C. §§ 1343 and 2]

I.   <u>INTRODUCTION</u>

7.   The allegations of paragraphs 1 through 3 of this Indictment are realleged and incorporated by reference as though set forth in full.

II.  <u>THE SCHEME TO DEFRAUD AND ITS EXECUTION</u>

8.   Between a beginning date unknown, but at least by in or around August 2014, and continuing through in or around February 2015, in the Southern District of Ohio, defendant **BRIAN HIGGINS** knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud Assurant and to obtain money and property owned by and under the custody and control of Assurant, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through a fraudulent insurance scheme.

9.   The scheme was designed to operate and did operate as described above in paragraphs 5(a) through 5(d) of this Indictment.

## III. THE WIRINGS

10.  On or about the dates listed below, in the Southern District of Ohio, and elsewhere, defendant **BRIAN HIGGINS,** for the purpose of carrying out the above-described scheme to defraud, caused the transmission of the following writings, signs, and signals, by means of wire communication in interstate commerce:

| COUNT | DATE | MAILING |
|-------|------|---------|
| FOUR | 8/28/2014 | Interstate email from defendant **BRIAN HIGGINS** to Assurant |

In violation of Title 18, United States Code, Section 1343 and 2.

A TRUE BILL

S|
Foreperson

BENJAMIN C. GLASSMAN
United States Attorney

BRENT G. TABACCHI
Assistant United States Attorney

Page **7** of **7**

