1

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF OHIO
 2                              AT DAYTON

 3      _____
                                           )
 4      UNITED STATES OF AMERICA,          )
                                           )
 5                      Plaintiff,         ) CASE NO. 3:18-cr-186-TMR
                                           )
 6              -vs-                       )
                                           )
 7      BRIAN HIGGINS,                     ) MOTION FOR CO-COUNSEL
                                           ) MOTION FOR WORST-CASE/
 8                      Defendant.         ) BEST-CASE
        _____) MOTION TO SHOW CAUSE
 9

10              TRANSCRIPT OF TELEPHONIC PROCEEDINGS
              BEFORE THE HONORABLE THOMAS M. ROSE,
11           UNITED STATES DISTRICT JUDGE, PRESIDING
                  THURSDAY, SEPTEMBER 3, 2020
12                         DAYTON, OH

13
        APPEARANCES:
14
        For the Plaintiff:       BRENT TABACCHI, ESQ.
15                               U.S. Attorney's Office
                                 200 W. Second Street
16                               Room 602
                                 Dayton, OH  45402
17

18      For the Defendant:       TAMARA S. SACK, ESQ.
                                 Attorney at Law
19                               130 West Second Street
                                 Suite 310
20                               Dayton, OH  45402

21      Also Present:  Magistrate Judge Michael R. Merz

22          Proceedings recorded by mechanical stenography,
        transcript produced by computer.
23
                        Mary A. Schweinhagen, RDR, CRR
24                      Federal Official Court Reporter
                           200 West Second Street
25                           Dayton, OH  45402
                              *** *** *** **
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

```
09:52:02   1              P-R-O-C-E-E-D-I-N-G-S                    9:52 A.M.
09:52:02   2              THE COURT:  We're before the Court this morning in
09:52:04   3    the matter of the United States of America versus Brian
09:52:06   4    Higgins.  This is Case Number 3-18-cr-186.  And we are here
09:52:12   5    present for several matters:  One, counsel for Mr. Higgins has
09:52:24   6    filed for a pretrial hearing, set forth a worst-case/best-case
09:52:32   7    scenario.  I believe there's also a motion for appointment of
09:52:37   8    co-counsel.  And then the government has filed a motion for an
09:52:41   9    order to show cause against Mr. Higgins.
09:52:46  10         Would counsel enter their appearance.
09:52:48  11              MR. TABACCHI:  Good morning, Your Honor.  Brent
09:52:50  12    Tabacchi on behalf of the United States.
09:52:52  13              MS. SACK:  Good morning.  Tamara Sack on behalf of
09:52:55  14    Brian Higgins.
09:52:56  15              THE COURT:  All right.  I think what we'll do,
09:53:00  16    Ms. Sack, if we could, we'll start with your motions.  Do you
09:53:03  17    wish to address the Court with regard -- or supplement your
09:53:07  18    motion for co-counsel?
09:53:09  19              MS. SACK:  Yes, Your Honor.  Thank you very much.
09:53:11  20    Your Honor, as indicated in my motion, I was appointed to
09:53:15  21    represent Mr. Higgins on April 2nd of this year.  He
09:53:19  22    previously had prior private counsel.  And upon my
09:53:25  23    appointment, I engaged in immediate communications with
09:53:29  24    Mr. Higgins, a slew of emails, phone calls, and several
09:53:34  25    appointments with me at my office; and the government, of
```

```
09:53:37   1   course, provided the discovery, which is voluminous insofar as
09:53:40   2   there are bank records concerning four different bank
09:53:43   3   accounts, the bank accounts of one of the witnesses and three
09:53:48   4   bank accounts associated with Mr. Higgins.
09:53:51   5        I endeavored to make sense of those records.  I received
09:53:57   6   in the last batch of discovery information from the government
09:54:00   7   as to what accounting they had done with relation to the
09:54:06   8   indictment.  I was able to see that such that it is.  But even
09:54:11   9   so, there are, at least as part of the defense, a necessity to
09:54:15  10   explore the records of the government's witness insofar as the
09:54:23  11   disbursement of funds relate.
09:54:26  12        It is challenging.  I don't have an accounting
09:54:28  13   background.  I was a political science major.  But that said,
09:54:32  14   I think I went as far as precalculus in school, but I was able
09:54:35  15   to understand it, but indeed I need more professional help
09:54:39  16   insofar as those bank records are concerned.
09:54:43  17        Your Honor, I understand that the provisions of the CJA
09:54:49  18   counsel is very limited insofar as allowing for co-counsel, of
09:54:53  19   course in capital offenses and treason and some other cases,
09:55:01  20   but not one necessarily amounting to mail fraud and wire
09:55:03  21   fraud.  However, each case is different and I submit, Your
09:55:06  22   Honor, that this is a complicated case and one that warrants
09:55:09  23   co-counsel.
09:55:11  24        I would emphasize that I've done all the heavy lifting
09:55:14  25   here.  I merely would need somebody to help facilitate at the
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

```
09:55:18   1   trial.
09:55:20   2           So that's what I have to say insofar as supplementing my
09:55:23   3   motion for appointment of co-counsel in this case.  Thank you.
09:55:27   4              THE COURT:  Thank you.
09:55:28   5           Mr. Tabacchi, do you have anything with regard to that
09:55:31   6   motion?
09:55:31   7              MR. TABACCHI:  No, Your Honor.
09:55:32   8              THE COURT:  Ms. Sack, the Court understands your
09:55:38   9   motion and is sensitive to the motion.  The Court does not in
09:55:41  10   any way, shape, or form argue with the fact that this is a
09:55:48  11   complex case.  However, the Court has certain parameters, and
09:55:56  12   the Court does not believe that this is a case within which
09:55:58  13   the Court would appoint co-counsel.
09:56:00  14           However, the Court would indicate to you that the Court
09:56:04  15   would be willing to give some consideration if, as you've
09:56:07  16   indicated in your motion, you are in need of some type of
09:56:12  17   expert or professional help with regard to the documentation
09:56:16  18   or the accounting documentation; that possibly could be an
09:56:21  19   avenue in which you may be able to get some assistance in the
09:56:31  20   matters in which you have indicated.
09:56:34  21           So the Court, upon a motion, would take those things
09:56:36  22   under consideration.  However, at this point in time the
09:56:42  23   motion for co-counsel is denied.
09:56:43  24              MS. SACK:  Thank you, Your Honor.
09:56:44  25              THE COURT:  Now, there is a motion for worst-case/
```

```
09:56:46   1   best-case.  Do we want to do that at this point in time?
09:56:49   2               MR. TABACCHI:  That's -- whatever the Court's
09:56:51   3   preference is.
09:56:52   4               THE COURT:  Is that all right, Ms. Sack?
09:56:53   5               MS. SACK:  Yes, Your Honor.
09:56:54   6               THE COURT:  Who wants to -- Mr. Tabacchi?
09:56:57   7               MR. TABACCHI:  Yes, Your Honor.  Is it okay if I
09:56:59   8   take my mask off?
09:57:01   9               THE COURT:  You may.
09:57:02  10               MR. TABACCHI:  Thank you.  Your Honor, Mr. Higgins
09:57:04  11   is currently charged in a four-count indictment:  Counts 1
09:57:07  12   through 3 charge mail fraud; Count 4 charges wire fraud.  I
09:57:12  13   just want to emphasize that to obtain a conviction on any one
09:57:16  14   of those counts the United States does not have to show that
09:57:21  15   the mailing or wiring itself contained fraudulent information
09:57:24  16   or contained any type of false statements.  It just has to be
09:57:28  17   something that was attendant or occurred during the course of
09:57:33  18   the alleged scheme.
09:57:34  19        What the government does have to show is that Mr. Higgins
09:57:38  20   made some type of material omission or a concealment of a
09:57:42  21   material fact; for instance, that if he used some of the
09:57:48  22   insurance money hypothetically to take a trip to San Juan,
09:57:53  23   Puerto Rico, and didn't disclose that to the insurance
09:57:56  24   company.
09:57:56  25          Upon conviction of any one of those four counts currently
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

```
09:57:59   1   charged in the indictment, statutory penalty's up to 20 years'
09:58:05   2   imprisonment, up to three years of supervised release, up to a
09:58:08   3   $250,000 fine -- and that's per count -- and then up to a $100
09:58:13   4   mandatory special assessment.
09:58:15   5       In crafting a sentence, the Court would have to consider
09:58:17   6   the United States Sentencing Guidelines, and this is the
09:58:21   7   United States' best estimate of those guidelines.  I
09:58:25   8   understand that Ms. Sack and her client may not agree with
09:58:28   9   those, but this is certainly what the government would argue
09:58:30  10   after a trial.
09:58:32  11       And this is the worst-case scenario.  Namely, a base
09:58:36  12   offense level of 7 under 2B1.1(a) and (b) because the charged
09:58:41  13   offense carries a penalty of 20 years or more.  In the view of
09:58:49  14   the United States, the intended loss here is in excess of
09:58:54  15   $150,000, which would be a 10-level increase under
09:58:58  16   2B1.1(b)(1)(F); another 2 levels for sophisticated means under
09:59:03  17   2B1.1(b)(10)(C); and then a 2-point enhancement for
09:59:09  18   obstruction of justice -- namely, witness harassment, witness
09:59:13  19   intimidation under 3C1.1; and then, finally, a 3-level
09:59:18  20   increase under 3C1.3 because it is the position of the United
09:59:22  21   States that this obstructive behavior occurred while the
09:59:25  22   defendant was on bond.
09:59:30  23       All total, 7 plus 10, plus 2, plus 2, plus 3 is a 24
09:59:35  24   which, under the guidelines, the government would estimate,
09:59:38  25   given Mr. Higgins' criminal history, would be a sentencing
```

| | | |
|---|---|---|
| 09:59:41 | 1 | range of 51 to 63 months of imprisonment, or 4 years, 3 months |
| 09:59:46 | 2 | to 5 years, 3 months. |
| 09:59:48 | 3 | In terms of a best-case scenario, the United States does |
| 09:59:51 | 4 | not have any plea offer tendered to the defendant, and at this |
| 09:59:55 | 5 | time has no plans to given his assertion that he is innocent |
| 09:59:59 | 6 | of these charges. If he would elect to plead open to all four |
| 10:00:05 | 7 | counts of the indictment, it's the government's view that the |
| 10:00:10 | 8 | calculations would be the same. He would, however, if he pled |
| 10:00:14 | 9 | relatively soon, would be 3 points off, for a 21, resulting in |
| 10:00:18 | 10 | a 37-to-46-month term of imprisonment, or 3 years, 1 month up |
| 10:00:24 | 11 | to 3 years, 9 -- excuse me -- 3 years, 10 months. |
| 10:00:31 | 12 | Your Honor, that's -- at least at this time, based on the |
| 10:00:34 | 13 | current shape of the indictment, would be the best-case/ |
| 10:00:38 | 14 | worst-case scenario under the parameters currently at issue. |
| 10:00:41 | 15 | THE COURT: All right. Thank you. |
| 10:00:42 | 16 | Ms. Sack, those -- that worst-case/best-case, in addition |
| 10:00:49 | 17 | to the sharing here with the record, has been explained to |
| 10:00:52 | 18 | Mr. Higgins? |
| 10:00:53 | 19 | MS. SACK: Yes, Your Honor. May I consult with him? |
| 10:00:55 | 20 | THE COURT: Sure. |
| 10:00:55 | 21 | MS. SACK: Thank you. |
| 10:00:56 | 22 | (Discussion between defendant and his attorney.) |
| 10:01:08 | 23 | MS. SACK: Your Honor, if I may? |
| 10:01:10 | 24 | THE COURT: Sure. |
| 10:01:10 | 25 | MS. SACK: Thank you very much. Prior to the |

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

10:01:12  1   hearing today on the best-case/worst-case, Mr. Higgins and I
10:01:16  2   met in my office, and I showed him the worksheets that I
10:01:20  3   calculated regarding his offense.  And in my worst-case
10:01:26  4   scenario, I was just off by 3 points, understanding that the
10:01:30  5   government put the obstruction enhancement of the plus 3.  So
10:01:34  6   that would be the only difference of my calculation.  Thank
10:01:39  7   you.
10:01:39  8            THE COURT:  Ms. Sack, the only thing I would ask,
10:01:41  9   then, is that the worst-case/best-case and the difference
10:01:47  10  between what Mr. Tabacchi has shared with the record and what
10:01:52  11  you have discussed with Mr. Higgins has been explained to him,
10:01:56  12  and if he had questions, you believe you answered those
10:01:59  13  questions?
10:02:00  14           MS. SACK:  Yes, Your Honor, I inquired of him.  He
10:02:04  15  said he had no questions.
10:02:04  16           THE COURT:  All right.  Is that correct,
10:02:07  17  Mr. Higgins, you have no questions about that worst-case/
10:02:09  18  best-case?
10:02:10  19           THE DEFENDANT:  No, sir, Your Honor.
10:02:11  20           THE COURT:  Thank you.
10:02:12  21     Well, obviously, we do a worst-case/best-case to share
10:02:18  22  with the record the situation at that point in time during the
10:02:22  23  case so that there is no misunderstanding in the future as to
10:02:29  24  what was the situation as we proceed with preparation towards
10:02:34  25  trial.

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

10:02:36  1    So that leaves us, then, with the motion by the
10:02:40  2  government for an order to show cause against Mr. Brian
10:02:48  3  Higgins that was filed, of course filed by the government, on
10:02:50  4  August the 21st.
10:02:54  5    Mr. Tabacchi.
10:02:55  6        MR. TABACCHI:  Thank you, Your Honor.  The United
10:02:57  7  States does believe that Mr. Higgins has violated the Court's
10:03:01  8  protective order on at least two occasions.  The Court entered
10:03:05  9  a protective order on July the 29th of this year.  Among other
10:03:12  10  things, the protective order restricted Mr. Higgins and his
10:03:15  11  counsel from disclosing information contained in the discovery
10:03:19  12  materials directly or indirectly to any person, except
10:03:23  13  attorneys or investigators, individuals who the defense team
10:03:28  14  is interviewing, potential experts.
10:03:30  15    Also there was an agreement that he and his counsel would
10:03:33  16  not use the discovery materials in any way other than for the
10:03:37  17  defense of this criminal case.
10:03:40  18    As the government filed, it was brought to the
10:03:44  19  government's attention on August the 3rd of this year,
10:03:49  20  approximately five days after the Court entered that
10:03:50  21  protective order, Mr. Higgins filed a amended civil complaint
10:03:56  22  in Montgomery County Court of Common Pleas.  He filed that
10:04:00  23  against two government witnesses or potential government
10:04:04  24  witnesses in this matter whose names and identities were
10:04:08  25  disclosed in the discovery.  In that amended complaint, in the

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

| | | |
|---|---|---|
| 10:04:13 | 1 | government's estimation, there are a number of paragraphs |
| 10:04:20 | 2 | that, whether one considers directly or indirectly, discloses |
| 10:04:24 | 3 | and uses discovery materials produced in this criminal case in |
| 10:04:30 | 4 | the civil matter, which is a violation of the protective |
| 10:04:32 | 5 | order, specifically paragraphs 9, 11, 12, 17, 18, and 21. |
| 10:04:39 | 6 | Mr. Higgins cannot deny that he is aware of that protective |
| 10:04:41 | 7 | order.  He actually appended it to his civil complaint. |
| 10:04:46 | 8 | And at this time the government would request that |
| 10:04:50 | 9 | Mr. Higgins be ordered to remove any and all references from |
| 10:04:56 | 10 | or to the criminal discovery in this case -- whether it be |
| 10:04:59 | 11 | audio recordings, video recordings, or paper discovery -- from |
| 10:05:02 | 12 | that civil complaint; and if he fails to do so, that he be |
| 10:05:07 | 13 | held in contempt until such time as he does comply. |
| 10:05:12 | 14 | And then second, Your Honor, I would like to bring to the |
| 10:05:16 | 15 | Court's attention that the week of August the 10th an |
| 10:05:17 | 16 | individual who purported to be representing or working on |
| 10:05:21 | 17 | Mr. Higgins' behalf who represented herself as his wife |
| 10:05:24 | 18 | arrived at the law firm of Taft Stettinius and produced five |
| 10:05:28 | 19 | pages of discovery materials to Taft Stettinius. |
| 10:05:33 | 20 | Taft Stettinius does not represent any individual and is |
| 10:05:37 | 21 | a witness in this case.  I spoke with counsel from Taft |
| 10:05:46 | 22 | Stettinius who advised that they viewed the disclosure of |
| 10:05:50 | 23 | those materials to them a violation of the protective order. |
| 10:05:52 | 24 | So, Your Honor, the government is concerned here that |
| 10:05:54 | 25 | there are two instances back to back within a week, a week and |

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
| 10:05:59 | 1  | a half of the entry of this protective order that, in the               |
| 10:06:02 | 2  | government's view, are clear and direct violations of that              |
| 10:06:06 | 3  | order, and the United States asks that the Court hold the               |
| 10:06:11 | 4  | defendant or ask the defendant to show cause why he shouldn't           |
| 10:06:14 | 5  | be held in contempt.  And, most importantly, to remove any and          |
| 10:06:18 | 6  | all references in that civil litigation to the criminal                 |
| 10:06:21 | 7  | discovery from this case.                                                |
| 10:06:22 | 8  |     THE COURT:  Is there any specific request with  |
| 10:06:24 | 9  | regard to these documents to Taft Stettinius?                           |
| 10:06:28 | 10 |     MR. TABACCHI:  Your Honor, the Taft Stettinius has |
| 10:06:31 | 11 | destroyed those documents.  I have spoken with them.  I take            |
| 10:06:35 | 12 | them at their word that they have not retained those items.             |
| 10:06:37 | 13 |     THE COURT:  Thank you.                          |
| 10:06:39 | 14 | Ms. Sack, it's my understanding that Mr. Higgins does                   |
| 10:06:41 | 15 | want to make a statement, but first we'll go to you.                    |
| 10:06:45 | 16 |     MS. SACK:  Your Honor, as it relates to this    |
| 10:06:48 | 17 | violation of the protection order, I really -- you know, I'll           |
| 10:06:56 | 18 | be honest, I'm in an uncomfortable situation.  So I cannot --           |
| 10:07:01 | 19 | I just want to emphasize the fact that Mr. Higgins is                   |
| 10:07:04 | 20 | proceeding pro se in the civil suit.  I know nothing about              |
| 10:07:07 | 21 | that other than the documents I've looked at online on the              |
| 10:07:13 | 22 | Montgomery County Clerk of Courts, and documents that                   |
| 10:07:16 | 23 | Mr. Higgins has brought to me and shared with me.  I mean,              |
| 10:07:22 | 24 | he's acting on his own as it relates to this protection order.          |
| 10:07:26 | 25 | Thank you.                                                               |

10:07:26  1    THE COURT: Thank you.
10:07:28  2        Mr. Higgins, it's my understanding you want to make a
10:07:32  3    statement. Do you want to make that statement under oath?
10:07:34  4    THE DEFENDANT: Yes, Your Honor.
10:07:34  5    THE COURT: Would you please raise your right hand.
10:07:37  6        (Defendant sworn.)
10:07:40  7    THE COURT: You may -- now, my understanding is, is
10:07:42  8    that this is a statement that you believe is relevant to and
10:07:46  9    material to the motion that was filed by the government
10:07:51  10   requesting that the Court order you to show cause why you
10:07:54  11   should not be held in contempt; is that correct?
10:07:56  12   THE DEFENDANT: That is correct, Your Honor.
10:07:57  13   THE COURT: All right. You may proceed.
10:07:59  14   THE DEFENDANT: Thank you, Your Honor.
10:08:00  15       I have maintained the utmost respect for this Court, as
10:08:04  16   well as the process that I am unfortunately bound to. At all
10:08:07  17   times my counsel advised me that I need to exercise extreme
10:08:11  18   care in the handling of my discovery material, specifically to
10:08:15  19   my civil complaint that I have filed against the government's
10:08:18  20   confidential human sources.
10:08:22  21       The issue at hand is whether or not I violated the
10:08:25  22   protection order that you signed on July 29, 2020.
10:08:28  23       On July 10, 2020, the government's chief witnesses'
10:08:35  24   counsel filed a motion for more definite argument to my civil
10:08:39  25   complaint.

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

```
10:08:40   1         On July 22, 2020, Presiding Judge Gerald Parker issued an
10:08:46   2   order for me to amend my complaint.  I complied with that
10:08:50   3   order and used extreme care not to violate this Court's
10:08:54   4   protection order by putting a copy of said protection order
10:08:58   5   throughout my amended complaint.
10:09:01   6         The irony of this hearing is that the government's chief
10:09:04   7   witnesses' counsel, Mr. John Hilgeman, in the civil proceeding
10:09:08   8   recently filed a motion on behalf of the defendant in that
10:09:12   9   case.  In his motion he confirmed the identity of the
10:09:16  10   government's confidential human sources.  It seems to be the
10:09:19  11   same thing that I am alleged to have done here, only
10:09:23  12   Mr. Hilgeman clearly has exposed and confirmed what the
10:09:27  13   government has attempted to protect, its chief witnesses.
10:09:30  14         In fact, the Dayton Daily News published a story on March
10:09:36  15   2, 2020, in which they revealed the identity of one of the
10:09:38  16   government's confidential human sources.  The government's
10:09:41  17   chief witness was quoted by the news outlet as not being the
10:09:45  18   confidential human source.  In fact, he went on to say,
10:09:50  19   "Whoever that person was that assisted the FBI, more power to
10:09:56  20   them.  What a great job."
10:09:57  21         Once again, Your Honor, I have exercised extreme caution
10:10:01  22   in following Judge Parker's order.  In fact, I am certain that
10:10:05  23   the government has not provided a copy of that order.  If it
10:10:07  24   pleases this Court, I have a complimentary copy for review.
10:10:13  25         With that, Your Honor, I rest.
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

10:10:14  1     THE COURT: Thank you.
10:10:17  2     Mr. Tabacchi.
10:10:18  3     MR. TABACCHI: Your Honor, I haven't heard a single
10:10:22  4  thing from Mr. Higgins that explains why he violated this
10:10:26  5  Court's order. The issue isn't whether or not someone has
10:10:27  6  been identified as a confidential human source. The
10:10:31  7  government in noting the violations of the protective order
10:10:35  8  didn't reference the portions of his civil complaint where he
10:10:38  9  makes that allegation. What this has to do with is the fact
10:10:41  10 that there is discovery materials -- documents, audio
10:10:44  11 recordings, video recordings -- that are property of the
10:10:46  12 government that were selected through grand jury process and
10:10:50  13 are subject to a protective order not to be used in any way,
10:10:53  14 shape, or form.
10:10:54  15     It's not about who or who isn't or wasn't a government
10:10:58  16 informant. It's about this defendant affirmatively using
10:11:02  17 discovery from a criminal case to advance his civil case.
10:11:06  18 Whether a judge in the civil case tells him to amend his
10:11:11  19 complaint, you know, that's on him to find a way to do that
10:11:14  20 without reliance on materials that are protected under this
10:11:19  21 protective order. And so far, Your Honor, I have not heard a
10:11:23  22 thing from Mr. Higgins. In fact, he's acknowledging that he
10:11:28  23 violated this Court's protective order. He's merely provided
10:11:32  24 an explanation of why he violated it, and that's to comply
10:11:35  25 with some civil order in a civil case.

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

| | | |
|---|---|---|
| 10:11:37 | 1 | This is a federal criminal case.  This is a federal |
| 10:11:42 | 2 | court.  Its rules apply, whether or not it's in this court or |
| 10:11:45 | 3 | its orders apply with equal force in this court and that |
| 10:11:49 | 4 | somehow there's a civil order in the court of common pleas |
| 10:11:53 | 5 | doesn't allow Mr. Higgins to escape the order and power of |
| 10:11:56 | 6 | this Court. |
| 10:12:09 | 7 | THE COURT:  Well, the Court, based upon what's been |
| 10:12:18 | 8 | presented and based upon the motions, based upon the |
| 10:12:24 | 9 | allegations in the motion, based upon Mr. Higgins' sworn |
| 10:12:30 | 10 | statement here upon the record, the Court does find |
| 10:12:35 | 11 | Mr. Higgins' conduct in this matter contemptuous.  The Court |
| 10:12:41 | 12 | is going to afford him ten days in which to show cause why he |
| 10:12:48 | 13 | should not be held in contempt of court for violating the |
| 10:12:53 | 14 | protective order. |
| 10:12:54 | 15 | The Court is also going to, on its own discretion, modify |
| 10:13:00 | 16 | the conditions of his supervision to add that he not violate |
| 10:13:09 | 17 | the Court's protective order.  Violation of that protective |
| 10:13:16 | 18 | order not only could justify a further motion of contempt, but |
| 10:13:28 | 19 | also could result in the Court finding Mr. Higgins in |
| 10:13:34 | 20 | violation of his conditions of bond supervision.  Violation of |
| 10:13:45 | 21 | conditions of bond supervision can result in modification of |
| 10:13:49 | 22 | those conditions or actually incarceration. |
| 10:13:58 | 23 | In addition to not violating or showing cause why he |
| 10:14:04 | 24 | should not be held in contempt, the Court would also order |
| 10:14:15 | 25 | that, as part of that, finding that his actions are |

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

```
10:14:23   1   contemptuous, the Court is going to order that within that
10:14:29   2   ten-day period of time he needs to proceed to again amend or,
10:14:35   3   I guess, move to amend in the common pleas court the
10:14:44   4   documentation, the complaint, removing any and all references
10:14:50   5   to the documentation which was protected by the protective
10:14:55   6   order and any and all references within that complaint to
10:14:59   7   those documents.
10:15:03   8        Mr. Tabacchi?
10:15:10   9            MR. TABACCHI:  Nothing further, Your Honor.  Thank
10:15:11  10   you.
10:15:11  11            THE COURT:  Ms. Sack?
10:15:12  12            MS. SACK:  Your Honor, I have nothing to say.  Were
10:15:16  13   you going to inquire of Mr. Higgins?
10:15:18  14            THE COURT:  I am.
10:15:18  15            MS. SACK:  Okay.  Thank you.
10:15:19  16            THE COURT:  Mr. Higgins, do you understand what I'm
10:15:21  17   asking, or telling?
10:15:22  18            THE DEFENDANT:  I do, Your Honor.
10:15:24  19            THE COURT:  We need to get this matter corrected.
10:15:29  20   This is a -- the Court finds -- and I'm willing to listen
10:15:33  21   to -- I am willing to let you purge this, the contemptuous
10:15:40  22   acts, but I do believe that they were in violation of my
10:15:44  23   protective order.  You do need -- I don't know what the
10:15:50  24   process is over there at this point in time.  I don't know
10:15:52  25   whether you can amend without permission of the Court to
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

```
10:15:59   1    amend.
10:16:00   2              THE DEFENDANT:  And I have no idea, Your Honor.
10:16:07   3              THE COURT:  Counsel, give me a couple seconds,
10:16:09   4    please.  We'll stand in recess for just a few minutes.
10:16:12   5              THE COURTROOM DEPUTY:  All rise.  This court stands
10:16:15   6    in recess.
10:16:22   7           (Recess from 10:16 a.m. until 10:19 a.m.)
10:19:58   8              THE COURT:  We're back on the record.
10:20:00   9         Counsel, the reason I took a brief recess -- and
10:20:04  10    Mr. Higgins -- the reason I took a brief recess is I just
10:20:07  11    wanted to confirm my thoughts that I believe that with regard
10:20:10  12    to the actions to be taken in the civil complaint and its
10:20:14  13    attachments, that's -- that will -- that will most likely have
10:20:22  14    to be done.  I don't think most likely, I think it has to be
10:20:24  15    done with leave of the judge of the common pleas court.  So
10:20:27  16    the order basically will be -- or the order is that
10:20:34  17    Mr. Higgins move for the common pleas court to allow him to
10:20:39  18    amend the second time, because I think it has been amended.
10:20:42  19    Mr. Higgins said it's been amended once, I believe, so there
10:20:45  20    would have to be an additional amendment.
10:20:48  21         Any questions?
10:20:48  22              MR. TABACCHI:  No, Your Honor.
10:20:50  23              THE COURT:  Mr. Higgins, any questions?
10:20:51  24              THE DEFENDANT:  Yes, Your Honor.
10:20:52  25              THE COURT:  Okay.
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

```
10:20:53   1            THE DEFENDANT:  Is that something that I would
10:20:55   2   initiate the Court to do on my end?
10:20:59   3            THE COURT:  You would file a -- under the state law,
10:21:03   4   under the state procedures, I believe -- and I may be a little
10:21:09   5   bit out of my bailiwick.  I haven't been in the state court
10:21:13   6   for 18 years.  But it's my understanding, as in the federal
10:21:19   7   court, it is necessary after a period of time or after an
10:21:23   8   amendment or after certain responses are made, which I believe
10:21:27   9   would be most likely what the situation is with your
10:21:29  10   complaint, it's necessary for -- the only time you can amend
10:21:34  11   the complaint is with leave of Court, with allow of Court.  So
10:21:40  12   you need to immediately file -- if you are going to follow the
10:21:42  13   Court's instructions and direction, you need to file a motion
10:21:44  14   with the common pleas court, with Judge Parker, to allow you
10:21:48  15   to amend the complaint.
10:21:50  16            THE DEFENDANT:  Yes, Your Honor.
10:21:51  17            THE COURT:  Anything further to come before the
10:21:54  18   Court?
10:21:54  19            MR. TABACCHI:  No, Your Honor.
10:21:55  20            THE COURT:  The Court will memorialize its findings
10:21:58  21   in an entry within the near future.
10:22:03  22            MR. TABACCHI:  Thank you, Your Honor.
10:22:05  23            MS. SACK:  Thank you, Your Honor.
10:22:06  24            THE COURT:  Thank you very much.
10:22:07  25            THE COURTROOM DEPUTY:  All rise.  This court stands
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

10:22:08  1   in recess.
10:22:09  2          (Proceedings concluded at 10:22 a.m.)
          3
          4
          5
          6                    CERTIFICATE OF REPORTER
          7
          8          I, Mary A. Schweinhagen, Federal Official Realtime
          9   Court Reporter, in and for the United States District Court
         10   for the Southern District of Ohio, do hereby certify that
         11   pursuant to Section 753, Title 28, United States Code that the
         12   foregoing is a true and correct transcript of the
         13   stenographically reported proceedings held in the
         14   above-entitled matter and that the transcript page format is
         15   in conformance with the regulations of the Judicial Conference
         16   of the United States.
         17
         18   s/Mary A. Schweinhagen
         19   _____ October 14, 2020
         20   MARY A. SCHWEINHAGEN, RDR, CRR
              FEDERAL OFFICIAL COURT REPORTER
         21
         22
         23
         24
         25

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*