

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | No. 3:18CR186TMR |
| | : | |
| **Plaintiff,** | : | S E C O N D |
| | : | S U P E R S E D I N G |
| **v.** | : | I N D I C T M E N T |
| | : | |
| **BRIAN HIGGINS,** | : | 18 U.S.C. § 1341 |
| | : | 18 U.S.C. § 1512(d)(1) |
| **Defendant.** | : | 18 U.S.C. § 1513(e) |
| | : | 18 U.S.C. § 2 |

The Grand Jury charges:

COUNTS ONE THROUGH THREE

[18 U.S.C. §§ 1341 and 2]

I.   INTRODUCTION

At all times relevant to this Indictment:

1.   Defendant **BRIAN HIGGINS** was a businessman in the
greater Dayton, Ohio metropolitan area.  Throughout that time,
defendant **BRIAN HIGGINS** lived at 7240 Meeker Creek Drive,
Dayton, Ohio (hereinafter "Meeker Residence"), a private, one-
story home with over 8,000 square feet of living space.
Defendant **BRIAN HIGGINS** held an interest in the the Meeker
Residence with an individual identified herein by the initials
C.H; C.H., however, did not reside at the Meeker Residence.

2. Nationstar Mortgage, LLC, now doing business as Mr. Cooper, (hereinafter "Nationstar") was a company headquartered in Texas that originated and serviced mortgages for customers throughout the United States. Nationstar, a financial institution within the meaning of Title 18, United States Code, Section 20, held a legal interest in the Meeker Residence.

3. Assurant, through its related entity Standard Guaranty Insurance Company, (collectively, "Assurant") was a specialized insurance business that operated in various states, including Ohio. Assurant provided homeowners insurance coverage on the Meeker Residence for Nationstar and C.H.

## II.  THE SCHEME TO DEFRAUD AND ITS EXECUTION

4. Between a beginning date unknown, but at least by in or around August 2014, and continuing through in or around February 2015, in the Southern District of Ohio, defendant **BRIAN HIGGINS** knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud Assurant and to obtain money and property owned by and under the custody and control of Assurant, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through a fraudulent insurance scheme. This mail fraud affected a financial institution.

5.    Defendant **BRIAN HIGGINS** devised this fraudulent scheme to operate, and the fraudulent scheme did operate, as follows:

a.    By summer 2014, the Meeker Residence was in financial distress.  In the preceding years, neither defendant **BRIAN HIGGINS** nor C.H. had made a mortgage payment on the Meeker Residence to Nationstar or any other financial institution.  The property previously had been in foreclosure, and the non-payment of the mortgage again placed it at significant risk of lapsing into similar proceedings once more.  Additionally, various entities had placed on the Meeker Residence thousands of dollars in liens representing judgments against defendant **BRIAN HIGGINS**. Around this same time, defendant **BRIAN HIGGINS** was embroiled in litigation that sought his removal from restaurant space that he operated on Third Street in Dayton, Ohio; the litigation ultimately resulted in him vacating the Third Street premises thereby triggering his search for new restaurant space in around late summer 2014.

b.    Despite the financial distress of the Meeker Residence, Nationstar obtained for its benefit and that of C.H. homeowner's insurance on the property.  This insurance was designed to provide funds to repair any damages to the Meeker Residence, thereby protecting the value of the property for

Nationstar as well as this mortgage company's financial interest in this residence.

c.    In or around July 2014, while defendant **BRIAN HIGGINS** resided at the Meeker Residence, the property sustained significant water damage from an apparent leak in a large fish tank.  Soon thereafter, defendant **BRIAN HIGGINS** submitted a claim in the name of C.H. to Assurant concerning the water damage.  In submitting this paperwork, defendant **BRIAN HIGGINS** understood that Assurant and Nationstar intended for him to use any money disbursed on the claim to fund and complete bona fide repairs of the Meeker Residence.  Neither Assurant nor Nationstar authorized or expected defendant **BRIAN HIGGINS** to divert this money for personal, non-repair related expenditures, such as funding new restaurant space, paying telephone bills, spending money at a casino, or on other personal expenses – particularly, given defendant **BRIAN HIGGINS's** non-payment of the mortgage as well as Nationstar's interest in the Meeker Residence.

d.    Assurant took affirmative steps to ensure that claimants did not improperly divert repair funds for improper and fraudulent purposes.  For instance, Assurant generally required a contractor to provide an estimate of, and management

over, the repair work. In doing so, Assurant anticipated that the contractor effectively would serve as a neutral party, receiving disbursements for repairs from the insurance company and completing the contemplated work. As an added protection against the misuse of funds by the claimant, the repair money was issued via checks in the name of some combination of Nationstar, the claimant and the contractor thereby requiring countersignatures of all parties listed on the check to release the funds. Moreover, the insurance funds were not released in a lump sum; rather, they were disbursed over a series of checks earmarked for certain portions of the repairs. By staggering the funds in this manner, Assurant or Nationstar could dispatch inspectors to a home to assess the status of repairs before issuing additional draws. Defendant **BRIAN HIGGINS** generally was aware of and understood these safeguards; he also knew that, because Nationstar held an interest in the Meeker Residence, any insurance money that he received also belonged to Nationstar.

e. In submitting a claim in the name of C.H. to Assurant concerning the water damage, defendant **BRIAN HIGGINS** did not plan to use the funds received from the insurer as expected -- namely, only for bona fide repair work to the Meeker Residence. Rather, defendant **BRIAN HIGGINS** intended to divert,

and actually diverted, significant portions of this money for
his own personal benefit and to make a personal profit on the
claim submitted in C.H.'s name.

      f.   To conceal his plan to improperly and
fraudulently divert significant portions of the designated
repair funds and to defeat the safeguards against such abuse,
defendant **BRIAN HIGGINS** sought assistance from a business
identified herein as Company A. Designating Company A as the
contractor on the project, defendant **BRIAN HIGGINS** caused this
entity to submit repair estimates to Assurant. In doing so,
defendant **BRIAN HIGGINS** did not plan for Company A to use all of
the funds requested through the estimate to perform bona fide
work on the Meeker Residence; rather, defendant **BRIAN HIGGINS**
instructed Company A to divert substantial portions of the
insurance funds directly to him for his own personal use,
including to pay living expenses, to fund the build out of his
new restaurant location, and to travel within the United States.
For instance, in or around December 2014, defendant **BRIAN
HIGGINS** deposited into his personal bank account an
approximately $41,000 check issued to C.H. and Company A that
represented insurance proceeds earmarked for repairs at the
Meeker Residence. Rather than using the funds for repair work

as promised, represented, and required, defendant **BRIAN HIGGINS** used the money for personal expenses and diverted portions of the money to another bank account where he spent the funds on, among other things, hotels, travel, and dining out.

g. To create an appearance of work at the Meeker Residence, defendant **BRIAN HIGGINS** agreed for Company A to use a small portion of one of the draws received from Assurant and Nationstar to complete certain repairs at the property. Defendant **BRIAN HIGGINS** intended for these smaller repairs to convince any inspectors or adjusters from Assurant or Nationstar to authorize additional draws or disbursals on the claim. Having created the appearance of repair work, defendant **BRIAN HIGGINS** intended to divert and actually diverted a subsequent draw primarily for his own personal benefit as described above.

h. As part of the claim's process, Assurant also required that the claimant submit true and accurate information to it, concerning, among other things: the cost of expected repairs as well as bona fide invoices documenting repair work performed, or expected to be performed, on the residence; as well as the true identity of the contractor performing the work. Based on the claimant's tacit representation concerning the validity of this paperwork -- including, among other things,

bona fide invoices and repair cost estimates — Assurant and Nationstar issued funds ultimately destined for, among others, the vendor who performed the purported repair work on the property.

i.    Rather than submitting bona fide, accurate invoices and other documentation concerning repairs performed on the Meeker Residence, defendant **BRIAN HIGGINS** procured and caused to be submitted paperwork that materially misrepresented the repair work planned to be performed on this property. Through conversations and other materials that he caused to be submitted to Assurant, defendant **BRIAN HIGGINS** omitted material facts concerning, among other things, the status of work at the Meeker Residence and how defendant **BRIAN HIGGINS** had used, and planned to use, funds issued by Assurant and co-owned by Nationstar.  Additionally, when Company A withdrew as the contractor on the project in or around December 2014, defendant **BRIAN HIGGINS** purported to hire a business known as ProTech to serve as the new contractor; defendant **BRIAN HIGGINS** failed to disclose and actively concealed that he owed or otherwise controlled ProTech.  In taking these actions, defendant **BRIAN HIGGINS** intended to stop inquiries from Assurant or Nationstar concerning his misuse of their funds as well as induce the

insurance company to issue additional money that he planned to divert for his own personal benefit rather than repairing the Meeker Residence as represented.

      j.   Based on defendant **BRIAN HIGGINS'** false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, Assurant issued funds, and sustained losses, totaling over thousands of dollars.

      k.   Likewise, defendant **BRIAN HIGGINS** never disclosed to Nationstar and, in fact, actively concealed from it, his misuse of the insurance proceeds in which this mortgage lender also had an interest. Rather than using the insurance proceeds to fully repair the Meeker Residence and thereby restore its value as expected by Nationstar, defendant **BRIAN HIGGINS** misappropriated a substantial portion of the insurance proceeds (which also belonged to Nationstar) for his own personal benefit as described above.

III. THE MAILINGS

      6.   On or about the dates listed below, in the Southern District of Ohio, defendant **BRIAN HIGGINS**, for the purpose of carrying out the above-described scheme to defraud, caused the items described below to be deposited and to be sent and

delivered by the United States Postal Service as well as private and commercial interstate carriers:

| COUNT | DATE | MAILING |
|-------|------|---------|
| ONE | 8/15/2014 | Letter from Assurant addressed to C.H. at the Meeker Residence |
| TWO | 9/10/2014 | Check totaling $14,666.89 to a company identified herein by the initials U.D. |
| THREE | 2/4/2015 | Letter from Assurant addressed to defendant **BRIAN HIGGINS** at the Meeker Residence |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FOUR

[18 U.S.C. §§ 1341 and 2]

I.  INTRODUCTION

7.   The allegations of paragraphs 1 through 3 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth in full.

II.  THE SCHEME TO DEFRAUD AND ITS EXECUTION

8.   Between a beginning date unknown, but at least by in or around August 2014, and continuing through in or around February 2015, in the Southern District of Ohio, defendant **BRIAN**

**HIGGINS** knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud Nationstar and to obtain money and property owned by and under the custody and control of Nationstar, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through a fraudulent scheme. This mail fraud scheme affected a financial institution.

9.   The scheme was designed to operate and did operate as described above in paragraphs 5(a) through 5(k) of this Second Superseding Indictment.

III. THE MAILING

10.   On or about the dates listed below, in the Southern District of Ohio, and elsewhere, defendant **BRIAN HIGGINS**, for the purpose of carrying out the above-described scheme to defraud, caused the items described below to be deposited and to be sent and delivered by the United States Postal Service as well as private and commercial interstate carriers:

| COUNT | DATE | MAILING |
|-------|------|---------|
| FOUR | 10/7/2014 | Letter from Nationstar addressed to C.H. at the Meeker Residence |

Page **11** of **14**

In violation of Title 18, United States Code, Section 1341 and 2.

## COUNT FIVE

[18 U.S.C. § 1512(d)(1)]

Between in or around March 2020 and in or around December 2020, in the Southern District of Ohio, defendant **BRIAN HIGGINS** intentionally harassed another person -- namely, an individual identified herein by the initials M.M. -- and thereby attempted to hinder and dissuade M.M. from attending and testifying in an official proceeding -- namely, *United States v. Brian Higgins*, Case No. 3:18CR186, a matter pending before a court of the United States.

In violation of Title 18, United States Code, Section 1512(d)(1).

## COUNT SIX

[18 U.S.C. § 1512(d)(1)]

Between in or around March 2020 and in or around December 2020, in the Southern District of Ohio, defendant **BRIAN HIGGINS** intentionally harassed another person -- namely, an individual identified herein by the initials S.W. -- and thereby attempted

Page **12** of **14**

to hinder and dissuade S.W. from attending and testifying in an official proceeding -- namely, *United States v. Brian Higgins*, Case No. 3:18CR186, a matter pending before a court of the United States.

In violation of Title 18, United States Code, Section 1512(d)(1).

## COUNT SEVEN

[18 U.S.C. § 1513(e)]

Between in or around March 2020 and in or around December 2020, in the Southern District of Ohio, defendant **BRIAN HIGGINS** knowingly, with the intent to retaliate, took any action harmful to an individual identified herein by the initials M.M., including interference with the lawful employment and livelihood of M.M., for providing to a law enforcement officer truthful information relating to the commission and possible commission of any Federal offense.

In violation of Title 18, United States Code, Section 1513(e).

COUNT EIGHT

[18 U.S.C. § 1513(e)]

Between in or around March 2020 and in or around December 2020, in the Southern District of Ohio, defendant **BRIAN HIGGINS** knowingly, with the intent to retaliate, took any action harmful to an individual identified herein by the initials S.W., including interference with the lawful employment and livelihood of S.W., for providing to a law enforcement officer truthful information relating to the commission and possible commission of any Federal offense.

In violation of Title 18, United States Code, Section 1513(e).

A TRUE BILL

S/ FOREPERSON
Foreperson

DAVID M. DEVILLERS
United States Attorney

BRENT G. TABACCHI
Assistant United States Attorney

Page **14** of **14**