UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : Case No.: 3:18CR186TMR |
| | : |
| **Plaintiff,** | : **MOTION IN LIMINE NO. 1:** |
| | : **EXCLUSION OF IRRELEVANT** |
| **vs.** | : **ARGUMENTS AND EVIDENCE** |
| | : |
| **BRIAN HIGGINS,** | : |
| | : |
| **Defendant.** | : |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Southern District of Ohio, hereby files this motion in limine to preclude the defense from presenting irrelevant and immaterial arguments and evidence at trial. This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument as may be presented at any hearing on this motion.

DATED: January 8, 2020            Respectfully submitted,


DAVID M. DEVILLERS
UNITED STATES ATTORNEY

s/Brent G. Tabacchi
BRENT G. TABACCHI (6276029 IL)
Assistant United States Attorneys
Attorneys for Plaintiff
602 Federal Building
200 West Second Street
Dayton, OH 45402
Telephone: (937) 225-2910
Fax: (937) 225-2564

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

The United States seeks a pretrial order, precluding defendant Brian Higgins from presenting certain irrelevant and immaterial evidence or arguments to the jury at trial. Throughout this matter, Mr. Higgins has submitted documents to the Court and raised in correspondence a series of claims unconnected to the merits of the mail fraud and witness tampering charges pending against him.

The issues irrelevant to his case have included: (1) information that he claims to possess concerning politicians in Chicago awarding a contract to a convicted sex offender, which he variously has styled as "Code of Silence", "What About the Children", or "Save the Children"; (2) his efforts to compel law enforcement in Dayton to secure a proffer for him with FBI agents in Chicago concerning "Code of Silence"; (3) the penalties affixed to his charge; (4) the number of days that have passed from his arrest to his trial date; (5) circumstances surrounding his arrest at the FBI in spring 2019; and (6) disparaging, personal attacks on members of the prosecution team. None of these matters prove relevant to any issue in this case within the meaning of Federal Rule of Evidence 401 ("Rule

401"). Moreover, even if arguably material, these issues are excludable under Federal Rule of Evidence 403; whatever de minimis probative value they may have is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Higgins therefore should be barred from raising each of these matters at trial through argument or evidence.

## II.

## BACKGROUND

### A.    The Mail Fraud Allegations

Through a series of indictments, a federal grand jury has charged Mr. Higgins with mail fraud and witness tampering. *See* R. 57, Second Superseding Indictment. In general terms, the most recent charging instrument alleges that, during 2014 and 2015, Mr. Higgins lived at, and held a property interest in a home at 7240 Meeker Creek, Dayton, Ohio ("Meeker Residence"). *See id.* ¶ 5a. The property was in financial distress with its mortgage holder. *See id.* Mr. Higgins had not made a mortgage payment on the home in years; the house additionally had thousands of dollars in liens on it. *See id.* The home effectively was "upside down". To protect its interest in the property, the mortgage company placed forced insurance on the Meeker Residence. *See id.* ¶ 5b.

2

During mid-2014, Mr. Higgins filed a claim on the insurance policy, alleging that a large fish tank had leaked at the residence and caused thousands of dollars in damages to the property. *See id.* ¶ 5c. The indictment alleges that, rather than using the insurance money to repair the Meeker Residence as both the mortgage and insurance companies expected, Mr. Higgins improperly diverted substantial portions of these insurance funds for improper purposes, including to fund the opening of a new restaurant, to gamble at a casino, and to travel during 2014 and 2015. *See id.* ¶¶ 5e – 5k. The charging instrument further explained that Mr. Higgins took affirmative steps, as well as omitted material facts, to conceal these fraudulent activities from the mortgage and insurance companies.[1] *See id.*

B. **Mr. Higgin's Arrest**

In or around December 2018, a federal grand jury returned an under-seal indictment against Mr. Higgins concerning the above-described activities. (R. 5, Indictment). The Court issued an arrest warrant for Mr. Higgins at that time. (R. 9, Arrest Warrant dated 12/13/18 at 23).

During April 2019, while the arrest warrant was outstanding, Mr. Higgins cold-called the Federal Bureau of

---

[1] The indictment also alleges that Mr. Higgins attempted to tamper with and retaliate against, witnesses in this case. *See* R. 57, Second Superseding Indictment).

Investigation in Dayton, Ohio, and indicated that he wished to provide information to it concerning alleged public corruption in Chicago, Illinois. *See* Ex. A, Higgins 1/5/2021 Letter to Tamara Sack. Knowing the existence of the outstanding warrant, FBI requested that Mr. Higgins come to its offices ostensibly to discuss his allegations; in reality, the agency intended to arrest him at its facility, eliminating the need to locate him. *See id.*

On April 30, 2019, Mr. Higgins arrived at the FBI in Centerville, Ohio, with an attorney. Agents proceeded to arrest Mr. Higgins on the outstanding warrant. They did not either question him or obtain any statements from him at that time. Nor did they collect any physical evidence from Mr. Higgins. In sum, the arrest on the outstanding warrant occurred years after the conduct alleged in the indictment and yielded no evidence that the United States intends to introduce at trial. Despite that, Mr. Higgins has fixated on his arrest – apparently linking it to what he terms "Code of Silence" (discussed below) and expressing displeasure that he was not arrested at his personal residence.[2] *See id.*

---

[2] Mr. Higgins oddly has complained that other "related" defendants were arrested at their homes. Assuming that Mr. Higgins was referencing, among others, RoShawn Wiburn, Joey Williams, Steve Rauch, or Joyce Cameron, none were arrested at their personal residence.

C. **Mr. Higgin's Repeated References to "Code of Silence",**
**"What About the Children" and the "CHILDREN"**

Since his arrest, through documents filed with the Court and correspondence to the United States and various government agencies and officials, Mr. Higgins repeatedly has fixated on what he variously has termed "Code of Silence", "What About the Children" and the "CHILDREN" (collectively "Code of Silence"). *See, e.g.,* Ex. A, Higgins 1/5/2021 Letter to Tamara Sack; Ex. B, Higgins 1/6/2021 Letter to Brent Tabacchi; Ex. C., Higgins 12/30/2020 Email to Tamara Sack (entitled "The Children" and indicating that he "will be forced to talk about the CHILDREN") (emphasis in original); R. 59-1, Higgins 12/28/20 Letter to Tamara Sack.  Although his description of "Code of Silence" morphs, the gravamen of his allegations center on a contract that he claims the City of Chicago (and specifically now-indicted Alderman Edward Burke) awarded to businesses in the late 2000s or early 2010's apparently as a result of bribery; Mr. Higgins alleges that a former Thornton, Illinois, firefighter and convicted sex offender named John Klaczak was affiliated with one of the companies that received this contract.[3]  Mr. Klaczak's criminal activity was well-documented

---

[3] Notably, based on publicly available information as well as a video on a website that he has repeatedly referenced, it appears that Mr. Higgins (or a company that he owned) at one time held the contract that he claims the City of Chicago improperly awarded to this individual over a decade ago in a different

and received extensive attention in the mid-2000s to early 2010s. *See, e.g., Wragg v. Village of Thornton et al.*, 604 F.3d 464 (7th Cir. 2010) (detailing the section 1983 action filed by one of Klaczak's victims and the events giving rise to it). Based on his own statements, over the last decade, Mr. Higgins already has made these allegations public by, among other things: filing a civil action in Chicago concerning this matter, *see* Ex. A, Higgins 1/5/2021 Letter to Tamara Sack (explaining and attaching qui tam lawsuit that he filed against Klaczak and others, of which the Illinois Attorney General was aware and moved to dismiss); sending correspondence to various law enforcement and public figures concerning his claims; and maintaining a website detailing his allegations. *See generally* Exs. A – C.

Through his communications, Mr. Higgins now amorphously attempts to link these allegations of corruption in Chicago to a claim that he wishes to help the "CHILDREN". Hinting that he has information concerning, at a minimum, a victim of Klaczak's past sexual abuse, he has demanded that law enforcement in Dayton arrange a meeting with authorities in Chicago to discuss the matter. For instance, in correspondence, Mr. Higgins referenced by name one of the now-adult victims from Klaczak's

---

jurisdiction.

mid-2000 conviction and tacitly questioned why the United States would not tell this person's story. *See* Ex. C, Higgins 12/30/2020 Email to Tamara Sack (entitled "The Children" and referencing one of Klaczak's victims). Notably, as detailed in published federal cases from the 2010s, law enforcement in the Chicago area has known the identity of this victim for over a decade, and his harrowing story previously has been made public; Klaczac, in fact, was convicted for his actions against this individual. *See, e.g.*, *Wragg v. Village of Thornton et al.*, 604 F.3d 464 (7th Cir. 2010). Mr. Higgins has threatened to hire a "publicist" to generate negative coverage of what he falsely characterizes as government inaction concerning the already well known story of this victim; Mr. Higgins offered to refrain from doing so if the United States agreed to dismiss his case. Ex. C., Higgins 12/30/2020 Email to Tamara Sack (entitled "The Children" and indicating that his "final offer stands".

Whenever Mr. Higgins has been pressed concerning how these claims relate to the charges against him, he largely repeats a mantra that he wants to help the children. He has provided no explanation how these claims -- which relate to temporally and geographically distant events -- connect to his case.[4]

---

[4] Mr. Higgins has now started referencing random meetings that he had with a priest in Chicago concerning Code of Silence and allegations directed now at that priest concerning child abuse. *See* Ex. B, Brian Higgins 1/6/2021 Letter to Brent Tabacchi.

### D.    Mr. Higgins' Raises Additional Irrelevant Matters

At various proceedings and through his correspondence, Mr. Higgins has raised a series of matters that prove irrelevant before a jury.  He variously has emphasized: (1) the statutory penalties affixed to the charges against him; (2) the number of days that he has been pending trial – all based on continuances that he requested and to which he agreed; and (3) the unidentified members of the government and media were watching this case.  He has further engaged in ad hominem attacks on the prosecution team, contending, for instance, that they have engaged in a coverup of the "Code of Silence".

## III.

## ARGUMENT

### A.    General Principles

"The accused does not have an unfettered right to offer testimony [or argument] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  A "defendant's right to present a defense [therefore] is not absolute[;]

---

This new "disclosure" shares a common theme with all of Mr. Higgins alleged information.  It concerns reports from another state about which he generally has no personal knowledge; rather, he collects and attempts to repackage as "secret" intel what, in reality, is long-known or otherwise publicly available reporting and media accounts concerning instances of alleged child abuse in Illinois – not Ohio.

criminal defendants do not have a right to present evidence [or argument] that . . . [is] irrelevant or immaterial." *United States v. Humprey,* 608 F.3d 955, 962 n.3 (6th Cir. 2010); *see also United States v. Buendia*, 907 F.3d 399, 402 (6th Cir. 2018) (district court properly excluded evidence that defendant used ill-gotten funds to benefit others).

Any evidence or argument that he wishes to tender to the jury must comport with Federal Rules of Evidence 401 and 402; it must make a fact of consequence in determining the action more or less probable than without its admission. *See* Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"); *Buendia*, 907 F.3d at 402 (evidence is irrelevant and therefore excludable where it "made no fact of consequence more or less probable"). Typically, relevant evidence has some logical connection – whether temporal or spatial – to the charges against a defendant. *See United States v. Ozuna*, 561 F.3d 728, 738 (7th Cir. 2009) (excluding as irrelevant allegations of agent misconduct as they had no connection to charges against defendant that arose from a temporally distinct incident involving a different agent); *United States v. Hamid*, 143 Fed. Appx. 683, 686-87 (6th Cir. 2005) (irrelevant whether co-defendant was an informant and received favorable treatment from government as it had no bearing on defendant's guilt or innocence); *cf. Tompkins v. Philip Morris USA, Inc.*, 362 F.3d

882, 900-01 (6th Cir. 2004) (discussing necessity of temporal link between evidence and point to be proven for it to be relevant).

Even if a piece of evidence proves relevant, it nevertheless must be admissible under Federal Rule of Evidence 403. Under that provision, a court should exclude otherwise relevant material if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403. Unfair prejudice arises when evidence "tends to suggest decision on an improper basis." *United States v. Schrock*, 855 F.3d 327, 335 (6th Cir. 1988). While this rule favors admissibility, it compels the exclusion of evidence when its de minimus value is eclipsed by the risk that it will cause a jury to act on a basis other than a defendant's guilt or innocence. *See United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("The defendant has no right to invite the jury to act lawlessly").

**B. Mr. Higgins' Should Be Barred from Presenting Evidence or Argument Concerning his "Code of Silence" Allegations as <u>They Are Inadmissible at Trial</u>**

Although Mr. Higgins has spent considerable time sending correspondence and submitting documents concerning what he has termed "Code of Silence", these matters are inadmissible under Rules 401 and 403. His allegations of corruption in Chicago

over a decade ago or his purported knowledge concerning Klaczac's offenses against minors have no connection to his guilt or innocence in this case.  These claims are irrelevant to whether he engaged in mail fraud or witness tampering and, in any event, create a substantial risk of confusing the issues and misleading the jury even if they had some as-yet-explained nexus to this case.

The charges contained in the indictment bear no temporal, geographic, or substantive connection to his allegations regarding what he has named "Code of Silence."  The grand jury has returned an indictment, alleging that Mr. Higgins engaged in mail fraud in Dayton, Ohio during 2014 and 2015.  It further concluded that, after the return of the original charges and production of discovery to him, he engaged in efforts during 2020 to retaliate against witnesses through filings in Ohio state court.

Mr. Higgins' contention that officials in Illinois improperly awarded a Chicago-city contract over a decade ago to a registered sex offender in that state has no relevance to the charges in this case.  His claims that he has information that will help the "CHILDREN" -- including a long-identified victim of this sex offender -- has no impact on his guilt or innocence of fraud and witness tampering.  These matters have no bearing – temporally, geographically, or substantively -- on his conduct

11

in Dayton, Ohio concerning an insurance claim in 2014-2015 and subsequent alleged efforts to tamper with witnesses in 2020. That plain fact renders irrelevant his decade-old information concerning alleged corruption and purported activities of sex offenders in another state. It makes no fact germane to the charges against him more or less likely. He should therefore be barred from presenting any evidence or argument concerning "Code of Silence" to the jury.

Even if these matters have some-as-yet-to-identified relevance to the charges against him, their de minimus probative value would be substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, and wasting time. Mr. Higgins allegations are squarely designed to distract from his charged criminal conduct – the subject of this case – and to generate a visceral response from the jury unmoored from his guilt or innocence of fraud and witnesses tampering. Indeed, his own writings seem to acknowledge that his statements are designed to create a subterfuge diverting attention from the charges against him. Rule 403 prohibits such efforts, and his attempts to invoke "Code of Silence" before a jury should be prohibited.

C. **Mr. Higgins Should Be Barred from Presenting Evidence or Argument at Trial Concerning Not Only His Efforts to Provide Information/Cooperate with Law Enforcement Concerning "Code of Silence" but also the United States' Response to Those Overtures**

Mr. Higgins should be barred from presenting evidence or arguments to the jury concerning his efforts to compel law enforcement in Dayton to arrange a proffer with the FBI in Chicago concerning his allegations related to "Code of Silence". Nor should he be permitted to characterize as a "coverup" law enforcement's declination to do so. These allegations are irrelevant to whether he engaged in mail fraud or witness tampering and, in any event, create a substantial risk of confusing the issues and misleading the jury.

First, for the reasons largely described above, Mr. Higgins' attempts to cooperate or provide information to law enforcement concerning "Code of Silence" is irrelevant to this case. Indeed, his efforts to disclose to law enforcement in Dayton, Ohio, dated information concerning crimes over which they have no jurisdiction or venue is doubly irrelevant. They simply shed no light on whether he committed the crimes alleged in the indictment against him. Law enforcement's decision to meet or not meet with an individual equally lacks import concerning whether he has committed the crimes with which he is charged. Accordingly, Mr. Higgins' efforts to disclose alleged

13

information concerning other criminal activity and law enforcement's reactions thereto are irrelevant under Rule 401.

Second, any such claims are inherently misleading, create a risk of confusing the issues, and will waste time. Mr. Higgins' assertions improperly suggest that a defendant has the right to meet with law enforcement for the purpose of disclosing purported crimes. However, it is well-settled that a defendant has "no constitutional right to cooperate with" law enforcement. *See Nyhuis v. Kildow*, 19 F.3d 19 (Table), 1994 WL 84922, at *1 (6th Cir. 1994); *United States v. Vargas*, 935 F.2d 1260, 1263 (10th Cir. 1991) (defendant has no absolute right to cooperate); *United States v. Jacobs*, 914 F. Supp. 41, 43 (E.D.N.Y. 1995) ("The defendant has no absolute right to cooperate or offer to cooperate"); *cf. Boss v. United States*, 2007 WL 1875864, at *2 (W.D. Mich. June 28, 2007) (no constitutional right to cooperate). His efforts to suggest that law enforcement has an obligation to meet with him creates a false impression that authorities in Chicago and Dayton have acted improperly in declining his overtures; this is the exact type of evidence that Rule 403 seeks to bar.

For similar reasons, he should be precluded from characterizing his inability to obtain a meeting with law enforcement in Chicago as a "cover up." It once more improperly suggests that law enforcement has an obligation to meet with any

individual who makes random allegations of criminal activity –
regardless of the age and reliability of the claims or an
agency's jurisdiction over them.  (As noted above, his
allegations concern matters over which neither courts nor law
enforcement in Dayton have jurisdiction; neither can compel
agencies that might have authority over such matters to meet
with him).  In short, these allegations represent nothing more
than an improper effort by Mr. Higgins to distract from the
substance of the criminal allegations against him.  Accordingly,
he should be barred from raising at trial claims that he
attempted to apprise law enforcement concerning "Code of
Silence" as well as the United States' response to those
overtures.[5]

---

[5] Moreover, if Mr. Higgins were permitted to raise these issues,
it would create a trial within a trial – one wholly disconnected
from the charges against him.  The United States would have to
explain that Mr. Higgins is not making new claims; through his
own correspondence, he tacitly concedes that he previously has
raised these allegations in public filings and letters to other
government officials over the past decade; that he keeps re-
presenting these matters suggests that no one has deemed them
credible.  He hints at having information only known to him, but
then reveals in correspondence information that he appears to
have gleaned from public information, not personal knowledge.
He has in this case been found in contempt, been alleged to have
committed new crimes while on bond and made spurious allegations
in court.

**D.   The Circumstances of Mr. Higgins' Arrest are Irrelevant and Immaterial to His Case**

Mr. Higgins repeatedly invokes the circumstances surrounding his arrest, again suggesting that they were somehow linked to "Code of Silence."  However, his arrest and the circumstances surrounding it – all of which occurred several years after the conduct giving rise to the indictment – are irrelevant under Rule 401.  *See United States v. Kellar,* 394 Fed. Appx. 158 (5th Cir. 2010) (circumstances of arrest irrelevant to income evasion charges).

In certain situations, the circumstances of an arrest may prove relevant at trial.  For instance, if police obtain incriminating statements from a defendant at the time of his arrest or obtain items of evidentiary value from him when executing an arrest warrant, this event might be germane to the criminal charges against him.  *See, e.g.*, *United States v. Ruiz-Chavez*, 612 F.3d 983, 987 (8th Cir. 2010) (cash and firearm recovered at time of arrest relevant to drug conspiracy charges).  Mr. Higgins' arrest raises no such issues.

Here, the FBI arrested Mr. Higgins at its offices several years after the events giving rise to the fraud charges.  It gathered no items of evidentiary value from him at his arrest. It obtained no statements that the United States intends to

16

introduce at trial. The circumstances of his arrest therefore provide no insight concerning his intent to defraud (or lack thereof) when he submitted his insurance claim several years earlier.

The Fifth Circuit's decision in *United States v. Kellar*, 394 Fed. Appx. 158 (5th Cir. 2010), is instructive. Charged with income tax violations between 2001 and 2008, the defendant sought to admit evidence at trial concerning the circumstances of her arrest by federal agents in 2008. *See id.* at 162. Specifically, according to the defendant, in executing her arrest warrant, agents "kicked in the door" to her home, "dragged her", refused to let her use the restroom unaccompanied, and allegedly touched her in an "inappropriate manner." *Id.* at 161. When she attempted to testify concerning the circumstances of her arrest at trial, the United States objected that the matter was irrelevant under Rule 401, and the district court agreed. In affirming the exclusion of the arrest evidence, the Fifth Circuit observed that the event had "no bearing on whether she willfully failed to pay her income taxes." *Id.* at 162. The court further noted that her arrest occurred after her indictment, and it therefore had no nexus to her state of mind at the time of the alleged offense. *See id.*

Like *Kellar*, the circumstances of Mr. Higgins' arrest have no bearing on the allegations against him in the indictment.

17

That event makes no more or less likely that he had an intent to defraud his mortgage company and insurer. Predating his alleged efforts to tamper with witnesses, his arrest provides no insight on his intent in filing a civil action against individuals who provided information against him. The circumstances of his arrest are wholly irrelevant to this case and should be excluded. *See Kellar*, 394 Fed. Appx. at 164 (circumstances of arrest irrelevant under Rule 401).

To be sure, Mr. Higgins has emphasized that agents lured him to FBI offices on a ruse. However, "[t]here is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant." *United States v. Michaud*, 268 F.3d 728, 733 (9th Cir. 2001) (proper for agents to engage in trickery to arrest someone); *see also* United States v. Alejandro, 368 F.3d 130, 137–38 (2d Cir.2004) ("There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant"). To permit him to raise his arrest merely to present evidence of this entirely proper ruse would confuse the issues, mislead the jury and waste time. It therefore inadmissible under Rule 403.

**E.  Mr. Higgins Should Be Prohibited from Disclosing the Statutory Penalties to the Jury**

Mr. Higgins has repeatedly taken issue with the statutory penalties attached to the charges against him. However, those

penalties are irrelevant to a determination of his guilt, and therefore he should be prohibited from discussing them at trial.

"It is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty or not guilty, . . . . [It] has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it." *United States v. Davidso*n, 367 F.2d 60, 63 (6th Cir. 1966). The Sixth Circuit Pattern Jury Instructions confirm this rule, advising: "Deciding what the punishment should be is [the] job [of the Court,] not [the jury.] It would violate [the jurors'] oaths . . . to even consider the possible punishment in deciding [their] verdict." Sixth Circuit Pattern Jury Instruction 8.05.

Given that jurors should base their verdict upon the evidence against an individual -- not the potential punishment that he confronts -- courts should foreclose a defendant from disclosing to a jury the potential penalties that he faces if convicted. *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) (district court properly granted motion in limine limiting cross examination concerning potential penalties). Because this matter is irrelevant and creates a substantial risk of unfair prejudice as well as confusion of the issues, the Court should bar Mr. Higgins from disclosing to the jury. *See Bilderbeck*, 163 F.3d at 978.

19

**F.  Mr. Higgins Should Be Barred From Raising the Delay Between His Arrest and Trial**

Mr. Higgins has repeatedly emphasized the number of days that have transpired between his arrest and trial date.  That fact has no bearing on his guilt or innocence; it provides no information that impacts any material matter in the case.  It is there irrelevant.  Alternatively, such claims therefore appear intended to mislead; Mr. Higgins and his counsel have sought and received multiple continuances in this matter.  He cannot now complain to the jury concerning time for which he asked.

**G.  Mr. Higgins Should Be Barred from Making Personal, Ad Hominem Statements Concerning Members of the Prosecution**

A defendant – whether through testimony or serving as his own counsel – cannot make "personal attacks on the prosecutor" before a jury.  *United States v. Young*, 470 U.S. 1, 8 (1983).  Because a "criminal trial does not unfold like a play with actors following a script", "unfounded and inflammatory attacks on opposing advocate" have no place in such proceedings.  *Id.*  Expressing his "negative feelings about [the legal team] and the criminal justice system ha[s] nothing to do with any the facts needed to convict him."  *United States v. Evans*, 908 F.3d 346, 354-55 (10th Cir. 2018) (court properly precluded defendant from making statements to jury complaining about the criminal justice system, counsel at trial, or the court).  Accordingly, Mr. Higgins should similarly be barred from making such statements.

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was served on defendant's counsel this 8th day of January 2021 via the Court's ECF System.

<u>s/Brent G. Tabacchi</u>
BRENT G. TABACCHI
Assistant United States Attorney