UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.: 3:18CR186TMR |
| | : | |
| **Plaintiff,** | : | **MOTION IN LIMINE NO. 3:** |
| | : | **PROPOSED ADMISSION OF RES** |
| **vs.** | : | **GESTAE OR INEXTRICABLY** |
| | : | **INTERTWINED EVIDENCE** |
| **BRIAN HIGGINS,** | : | |
| | : | |
| **Defendant.** | : | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Southern District of Ohio, hereby files this motion in limine to deem admissible at trial certain facts that constitute res gestae of, or are inextricably intertwined with the charged offense.  This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument as may be presented at any hearing on this motion.

DATED: January 21, 2021     Respectfully submitted,


DAVID M. DEVILLERS
UNITED STATES ATTORNEY

s/Brent G. Tabacchi
BRENT G. TABACCHI (6276029 IL)
Assistant United States Attorneys
Attorneys for Plaintiff
602 Federal Building
200 West Second Street
Dayton, OH   45402
Telephone: (937) 225-2910

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

A federal grand jury has charged defendant Brian Higgins with, among other things, participating in a scheme to defraud an insurance company and his mortgage holder between 2014 and 2015. Specifically, the indictment alleges that, living in a residence that was financially under water, Mr. Higgins fraudulently diverted insurance money earmarked for repairs of this economically distressed home for a variety of improper purposes, including: to travel, to build a new restaurant, and to dine out.

To provide context to these allegations, the United States intends to introduce at trial res gestae or inextricably intertwined evidence concerning, among other things: how this matter came to the attention of law enforcement; why authorities took certain steps in investigating the fraud alleged in the indictment; and the existence of thousands of dollars in liens on Mr. Higgins' home that contributed to its financial distress. Because these items either provide background to the investigation or help complete the story of the events surrounding Mr. Higgins' alleged fraudulent conduct, they are inextricably intertwined with, or constitute res gestae of, the charged offenses and therefore are admissible.

1

II.

**BACKGROUND**

A.    **The Mail Fraud Allegations**

Through a series of indictments, a federal grand jury has charged Mr. Higgins with mail fraud and witness tampering.  *See* R. 57, Second Superseding Indictment.  In general terms, the most recent charging instrument alleges that, during 2014 and 2015, Mr. Higgins lived at, and held a property interest in, a home at 7240 Meeker Creek, Dayton, Ohio ("Meeker Residence").  *See id.* ¶ 5a.  The property was in financial distress with its mortgage holder.  *See id.*  Mr. Higgins had not made a mortgage payment on the home in years; the house additionally had thousands of dollars in liens on it.  *See id.*  The home effectively was "upside down".  To protect its interest in the property, the mortgage company placed forced insurance on the Meeker Residence.  *See id.* ¶ 5b.

During mid-2014, Mr. Higgins filed a claim on the insurance policy, alleging that a large fish tank had leaked at the residence and caused thousands of dollars in damage to the property.  *See id.* ¶ 5c.  The indictment alleges that, rather than using the insurance money to repair the Meeker Residence as both the mortgage and insurance companies expected, Mr. Higgins improperly diverted substantial portions of these insurance funds for improper purposes, including: to fund the opening of a

2

new restaurant, to gamble at a casino, and to travel during 2014 and 2015.  *See id.* ¶¶ 5e – 5k.  The charging instrument further explained that Mr. Higgins took affirmative steps, as well as omitted material facts, to conceal these fraudulent activities from the mortgage and insurance companies.[1]  *See id.*

**B.**     **The Investigation of Mr. Higgins' Alleged Scheme**

The United States anticipates that it will prove the following facts at trial:

During 2014, the Federal Bureau of Investigation (FBI) opened an investigation concerning allegations of public corruption occurring in the Dayton area.  Mr. Higgins initially was not a subject or target of that matter.  Rather, he inadvertently came to the attention of law enforcement through interactions that he had with a person identified herein as Individual A.

During summer 2014, Mr. Higgins met with Individual A to discuss the above-described insurance claim and possible repair work on the Meeker Residence.  During their conversations, Mr. Higgins indicated that he had access to public officials in the Dayton area, who, in return for receiving improper benefits, would be willing to assist Individual A obtain work with various

---

[1] The indictment also alleges that Mr. Higgins attempted to tamper with and retaliate against, witnesses in this case. *See* R. 57, Second Superseding Indictment).

government entities.  During their interactions, Mr. Higgins also suggested that he intended to fraudulently divert money from the insurance claim for improper purposes.  In agreeing to meet with Mr. Higgins, Individual A had not anticipated that their conversations would turn to illegal activity.  Although Individua A had not recorded this interaction, Individual A alerted the FBI to its substance.

Based on this tip, over the next several months, FBI began to consensually record Mr. Higgins and his interactions with various individuals.  During these recordings – portions of which the United States intends to introduce at trial – Mr. Higgins and other individuals engaged in conversations that mixed discussions of the fraudulent insurance claim with efforts to curry improper favor with public officials.  These intertwined schemes continued for several months without disruption from investigators.

**III.**

4

**ARGUMENT**

A.   **The Start of the Investigation into Mr. Higgins and His Efforts to Introduce Witnesses to Purportedly Corrupt Public Officials Are Inextricably Intertwined with the Charged Offenses and Therefore Are Admissible**

The origin of the investigation into Mr. Higgins and his efforts to introduce witnesses to allegedly corrupt public officials constitute evidence that is res gestae to, and inextricably intertwined with, the mail fraud offenses charged against him in the indictment.  Federal Rule of Evidence 404(b) ("Rule 404(b)") has no application to acts that either are inextricably intertwined with, or constitute background evidence concerning, charges in an indictment.  *See United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000).  Often referred to as "res gestae" materials, testimony and exhibits are admissible under this doctrine when they are bound up "with the charged offense or [if] the telling of [these other acts] is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).  As the Sixth Circuit has explained, res gestae and inextricably intertwined evidence:

> put the charges in the appropriate context.  It would be exceedingly difficult for witnesses to relay a story without referencing preceding or contemporaneous acts that are incidental but necessary to telling a cogent story, as it relates to the charges the defendant is facing.  Thus, defendants are not entitled to a "sanitized" recounting of the facts, . . . and prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events.

5

*United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015); *see also United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (explaining that barring res gestae evidence would be tantamount to requiring the jury to "make its decision in a void -- without knowledge of the time, place, and circumstance of the acts which form the basis for the charge").

Res gestae and inextrixably intertwined evidence typically have certain hallmarks. They share "*a causal, temporal, or spatial connection* with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)(emphasis added). Moreover, they generally explain the "prelude to the charged offense, [are] directly probative of the charged offense, arise[] from the same events as the charged offense, form[] an integral part of a witness's testimony, or complete[] the story of the charged offense." *Id.* To that end, courts routinely deem admissible evidence concerning how an investigation began, *see, e.g., United States v. Leasor*, 2020 WL 4937787, at *3-5 (W.D. Ky. Aug. 24, 2020) (permissible to introduce evidence that supervised release status prompted search at home and sparked investigation); why law enforcement took certain actions, *United States v. Baker*, 2019 WL 969521, at *4 (N.D. Ohio Feb. 28, 2019) (finding evidence admissible to explain why law enforcement took certain investigative steps); or that the matters proves intermeshed with, or otherwise give context to,

6

conversations relevant to the charged offense, *see, e.g.,*
*United States v. Sumlin*, 956 F.3d 879, 890 (6th Cir. 2020
(witness testimony detailing other criminal activity with
defendant admissible as res gestae as it provided context to
conversations and their meaning); *United States v. Churn*, 800
F.3d 768, 799 (6th Cir. 2015) (evidence of witness's
contemporaneous business dealings with defendant at time of
fraud scheme relevant to provide context to their
relationship).

The materials that the United States intends to present
concerning the origin of this investigation as well as
subsequent law enforcement recordings that captured intermeshed
discussions of fraud and public corruption constitute proper
res gestae evidence. Because the jury should not be required
to guess concerning how Mr. Higgins came to the attention of
law enforcement, the United States may properly introduce his
initial unrecorded conversations with Individual A, discussing
not only his potential fraudulent insurance claim but also
alleged public corruption. Presentation of the totality of
this material provides necessary background concerning why the
FBI began to consensually record Mr. Higgins and places in
context its decision to investigate what the defendant has
incorrectly attempted to characterize as a civil fraud matter.
The genesis of this investigation and how the FBI responded to
it are directly intertwined with the charged offenses and

therefore are admissible.

Similarly, as captured on audio and video recordings, Mr. Higgins' effort to improperly ingratiate Individual A with local political figures was intermeshed with simultaneous discussions concerning the fraudulent insurance claim. Indeed, in many recordings, Mr. Higgins and Individual A engage in conversations that bounce rapidly between the charged fraud scheme and their contemporaneous efforts to solicit improper assistance from political figures. Attempting to excess discussions concerning political corruption from those regarding the fraud scheme would strip the meaning from the totality of many conversations.

Moreover, some explanation of Mr. Higgins efforts to introduce Individual A to government officials provides context to the FBI's investigative actions. It provides background concerning why law enforcement continued to record Mr. Higgins' conversations. His active efforts to introduce Individual A to public officials also provides insight concerning why law enforcement did not immediately move to disrupt the alleged fraud scheme. The jury should be allowed to consider this relevant information as it proves intermeshed with, and provides context to, the charged fraud offenses.

In sum, materials concerning the origins of the investigation and Mr. Higgins' efforts to introduce Individual A to public figures constitutes admissible res gestae evidence

concerning the charged fraud offense. These matters do not
relate to temporally or geographically remote allegations of
corruption unmoored to the insurance fraud alleged in the
indictment. Rather, this information has a direct casual,
temporal and spatial connection to this investigation and the
charges in the indictment that arose from it. These materials
are therefore admissible as res gestae of, or inextricably
intertwined with, the fraud allegations in the indictment. *See
Hardy*, 228 F.3d 745, 748 (res gestae evidence has temporal,
causal, or spatial link to the charged offense).

**B.    The Evidence of Liens on the Meeker Residence at the Time
       of the Insurance Claim Constitutes Res Gestae Evidence**

The existence of thousands of dollars in liens on the
Meeker Residence when Mr. Higgins submitted the fraudulent
insurance claim and improperly diverted the funds therefrom
constitutes admissible res gestae evidence. The liens provided
a prelude to, and the backdrop of, Mr. Higgins' alleged
fraudulent actions – the precise purpose of res gestae
materials. As directly alleged in the indictment, the liens
further placed the Meeker Residence in additional financial
distress with the mortgage company (and further under water for
Mr. Higgins). The existence of the liens therefore provides
necessary background evidence, *i.e.*, the context under which
Mr. Higgins submitted the fraudulent insurance claim. They
further are directly probative of the crimes with which he is

9

charged; the existence of the liens at the precise time when he submitted the insurance claim and proceeded to improperly divert the funds therefrom explains the incentives for his actions. As such, these materials constitute permissible res gestae or inextricably intertwined evidence and thus are admissible. *See, e.g., United States v. Ross*, 502 F.3d 521, 530 (6th Cir. 2007) (evidence of financial distress at time of offense directly probative of motive to commit fraud); *United States v. Kurlemann*, 2010 WL 3743639, at *3 (S.D. Oh. Sept. 10, 2010) (evidence of debts/financial condition as alleged in indictment constitute proper background evidence indicative of motive).

Alternatively, even if not res gestae, the existence of the liens constitutes permissible evidence under Rule 404(b) as they are directly probative of Mr. Higgins's motive and intent. Rule 404(b) favors admissibility; it is a "rule of inclusion, not exclusion." *United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996). Under this provision, "[e]vidence of other crimes, wrongs, or acts . . . may [] be admissible . . . as proof of motive, . . . intent, . . . knowledge . . . or absence of mistake or accident." Fed. R. Evid. 404(b). To admit evidence under this rule, a court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior acts occurred; (2) determine that the other act evidence is admissible for a proper purpose, *i.e.,* to establish intent,

lack of mistake, etc.; and (3) consider if the evidence satisfies Federal Rule of Evidence 403. *See United States v. Mack,* 258 F.3d 548, 553 (6th Cir. 2001).

The evidence concerning the liens on the Meeker Residence satisfies these standards. First, competent evidence proves that the liens occurred – specifically, court judgments and other public documents recording their existence on the property when Mr. Higgins filed the insurance claim and diverted the funds therefrom.

Second, evidence concerning the liens serves a proper purpose – namely, establishing Mr. Higgin's intent and motive. When a defendant "pl[eads] not guilty to a [specific intent] offense . . ., he put his general intent and specific intent at issue" and therefore "open[s] the door" to the admission of other acts evidence under Rule 404(b). *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004); *see United States v. Stephens-Miller,* 582 Fed. Appx. 626, 636 (6th Cir. 2014) (mail fraud is a specific intent crime). Here, the heavily indebted nature of the Meeker Residence – including the liens – provides insight to his motive and intent when filing the insurance claim. With the Meeker Residence heavily under water, on the brink of foreclosure, and of little liquid value to him, Mr. Higgins had incentive to improperly divert the insurance proceeds rather than using them to repair the residence. Indeed, the existence of these debts provides

11

insight into his intentions when he filed the claims – namely, that he viewed the funds as a personal windfall to spend as he pleased rather than restoring the value of the property for his mortgage holder. As such, evidence concerning the liens has a proper purpose. *See Ross*, 502 F.3d at 530 (evidence of financial distress at time of offense directly probative of motive to commit fraud); *Kurlemann*, 2010 WL 3743639, at *3 (same).

Third, the evidence is proper under Rule 403, which favors admissibility of materials. *See United States v. Jones*, 554 Fed. App'x 460, 473 (6th Cir.2014) (White, J., concurring) ("Rule 403 favors admissibility"). To warrant exclusion under this rule, the probative value of evidence must be substantially outweighed by its unfairly prejudicial effect. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee Notes. Evidence is not unfairly prejudicial merely because it has an adverse effect on the defense; unfair prejudice occurs only when "the jury responds negatively to some aspect of the evidence unrelated to its tendency to make the contested fact more or less probable." *United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir. 1988).

Here, the liens tend to establish Mr. Higgins' motive and intent. To be sure, this evidence may undermine his likely

12

claim that he did not purposefully misspend the insurance company's funds. That fact, however, is not "unfair" prejudice. *See Savinovich*, 845 F.2d 834, 837. Rather, this is the very reason that this material is admissible. As such, even if not res gestae, evidence concerning the liens on the Meeker Residence at the time of the insurance claim is nevertheless admissible to establish motive and intent under Rule 404(b).

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served on defendant's counsel this 21st day of January 2021 via the Court's ECF System.

                    s/Brent G. Tabacchi
                    BRENT G. TABACCHI
                    Assistant United States Attorney