```
                    UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION AT DAYTON
```

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.: 3:18CR186TMR |
| | : | |
| Plaintiff, | : | **REPLY IN SUPPORT OF MOTIONS IN** |
| | : | **LIMINE Nos. 1 – 4** |
| vs. | : | |
| | : | |
| **BRIAN HIGGINS,** | : | |
| | : | |
| Defendant. | : | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Southern District of Ohio, hereby files this reply in support of its motions in limine Number 1 through 4. This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument as may be presented at any hearing on this motion.

DATED: February 28, 2021      Respectfully submitted,

                                                    DAVID M. DEVILLERS
                                                  UNITED STATES ATTORNEY

                                                  <u>s/Brent G. Tabacchi</u>
                                                  BRENT G. TABACCHI (6276029 IL)
                                                  Assistant United States Attorneys
                                                  Attorneys for Plaintiff
                                                  602 Federal Building
                                                  200 West Second Street
                                                  Dayton, OH   45402
                                                  Telephone: (937) 225-2910
                                                  Fax: (937) 225-2564

**MEMORANDUM OF POINTS AND AUTHORITIES**

The United States responds seriatim to Mr. Higgins' opposition to the motions in limine. As detailed below (and the arguments contained in its original filings), the United States' motions are proper and therefore should be granted in their entirety.

**ARGUMENT**

**A. Motion in Limine No. 1: The Events Surrounding Mr. Higgins' Arrest Are Irrelevant and Therefore Should Be Excluded**

In response to the Government's motion to exclude various irrelevant arguments and evidence, Mr. Higgins appropriately concedes that his "Code of Silence" allegations,[1] which relate to purported public corruption and sexual abuse in Chicago, Illinois, are irrelevant to this criminal case, which arises from an alleged insurance fraud scheme involving Mr. Higgins' former personal residence in Ohio. Despite this concession, he maintains that the circumstances surrounding his April 2019 arrest in this matter, which occurred after he contacted the Federal Bureau of Investigation regarding his "Code of Silence" allegations, are somehow relevant to the current charges because they "go to [his] state of mind." (R. 68, Def.'s Resp. to Gov't

---

[1] As explained in the Government's first motion in limine, Mr. Higgins' "Code of Silence" allegations take a number of rhetorical forms – including "" and have previously been made public through various means.

Mots. in Limine, at 2-3.)  This argument should be rejected, and all evidence and argument relating to the arrest should be excluded under Federal Rules of Evidence 401 and 403 as irrelevant or immaterial.

As set forth in the Government's first motion in limine, Mr. Higgins was arrested at the FBI's offices in Centerville, Ohio on April 30, 2019.  The arrest occurred after Mr. Higgins voluntarily contacted the FBI in April 2019 and expressed a desire to provide information concerning purported public corruption in Chicago (*i.e.*, the general subject matter of his concededly irrelevant "Code of Silence" allegations).  At the time he contacted the FBI, Mr. Higgins was under sealed indictment and subject to an outstanding arrest warrant for the conduct underlying the alleged insurance fraud scheme.  The FBI asked that Mr. Higgins come to its offices for the ostensible purpose of discussing his public corruption allegations.  When he did so, the FBI took him into custody.

There is nothing to suggest that Mr. Higgins' state of mind at the time of his arrest is relevant – *i.e.*, probative of a "fact . . . of consequence in determining the action," Fed. R. Evid. 401(b) – to the pending charges.  The arrest occurred in April 2019, several years after the completion of the alleged fraud scheme in 2014 and 2015 and nearly a year prior to Mr. Higgins' filing of an allegedly retaliatory civil suit against

2

two witnesses in March 2020.  Moreover, Mr. Higgins' arrest took place when he arrived at the FBI offices with a lawyer to discuss what he now admits to be irrelevant allegations concerning unrelated conduct in a different state.  Simply put, nothing about Mr. Higgins' thought processes during the events immediately leading up to and culminating in his arrest bears any logical or temporal connection to the pending fraud and witness tampering charges.  Tellingly, Mr. Higgins does not attempt to show any such connection, beyond simply asserting that his state of mind during his arrest is relevant.  It is not.

Contrary to Mr. Higgins' assertions, the Fifth Circuit's decision in *United States v. Kellar*, 394 Fed. Appx. 158 (5th Cir. 2010) – which affirmed the exclusion on relevance grounds of testimony regarding the circumstances of the defendant's arrest – cannot be meaningfully distinguished from the present case.  Indeed, while the specific circumstances of the defendants' arrest in *Kellar* differ superficially from the specific circumstances of Mr. Higgins' arrest, there is one fundamental similarity between the cases.  As with the defendant in *Kellar*, Mr. Higgins' arrest occurred *after* he was indicted and "obviously could not have affected [his] state of mind . . . for alleged violations occurring before [his] arrest."  *Id.* at 164.  Thus, like the defendant in *Kellar*, Mr. Higgins "has not

3

demonstrated how the circumstances of [his] arrest have any bearing on whether" he intentionally engaged in mail fraud completed some four years earlier.  *Id.*

Even if evidence of Mr. Higgins' mental state during his arrest were somehow minimally probative of some unspecified relevant fact – and it is not – any probative value would be "substantially outweighed" by the danger of distraction, confusion, and delay such evidence would cause, warranting exclusion.  Fed. R. Evid. 403.  Given Mr. Higgins' characterization of his arrest – he claims he was "lured" to the FBI offices – there is a substantial risk that, if evidence of the arrest were introduced, the jury could somehow be confused or misled into thinking that the FBI's entirely permissible conduct was somehow improper or otherwise important to the case.  Similarly, because the circumstances of Mr. Higgins' arrest are substantially intertwined with his repeated efforts to invoke his concededly irrelevant "Code of Silence" allegations, permitting him to admit evidence of his arrest would create an intolerable risk that the jury will be dragged into a morass of irrelevant conspiracy theories far afield of the actual issues in the case.  The Court should eliminate these considerable dangers by excluding evidence of Mr. Higgins' arrest.  *See United States v. Reevey*, 364 F.3d 151, 157-58 (4th Cir. 2004) (affirming exclusion of evidence concerning circumstances of

defendant's arrest under Rule 403 where defendant "was not charged with any offense arising out of . . . his arrest" and "offenses charged were completed before" defendant's arrest).[2]

Finally, the fact that certain discovery materials may have included references to "the FBI Agent(s) phone messages to Mr. Higgins to arrange the April 30, 2019 meeting" does not change the analysis. (R. 68, Def.'s Response to Gov't Mots. in Limine, at 2.) Disclosure is not equivalent to admissibility. *See United States v. Estrada-Contreras*, 2018 WL 2159438, at *1 (W.D. Wash. May 10, 2018) (noting that Federal Rule of Criminal Procedure 16 "covers discovery information that need not be admissible").

**B.  Motion in Limine No 3: As Mr. Higgins' Own Filings Concede, Public Corruption Matters Are Inextricably Intertwined with His Fraud Scheme and Therefore Are Admissible at Trial**

Despite his own affidavit linking his efforts to introduce Individual A to public officials with his fraud case, Mr. Higgins now inexplicably argues that the two have no connection to one another. In making this claim, Mr. Higgins primarily

---

[2] Mr. Higgins asserts that he would not offer evidence of his arrest "for the purpose of confusing the issues, misleading the jury, undue delay or any other prohibitions set forth at Fed. R. Evid. 403." (R. 68, Def.'s Response to Gov't Mots. in Limine, at 2-3.) But, as the plain text of Rule 403 makes clear, Mr. Higgins' motive in offering such evidence is ultimately irrelevant to the analysis. It is the potential *effect* of the evidence – not its intended use – that matters; that is why evidence can be excluded under Rule 403 even if it is relevant.

5

emphasizes that the so-called public corruption matter is not alleged in the indictment. That fact has no bearing on whether his efforts to introduce Individual A to allegedly corrupt public officials was intermeshed with the insurance fraud crimes alleged in the indictment.

Contrary to Mr. Higgins' suggestion, it is well established that res gestae evidence need not be alleged as a free standing count or detailed in the indictment; indeed, the nature of res gestae or inextricably intertwined evidence contemplates that these matters were not charged, yet nevertheless prove necessary to place in context the crimes alleged in the indictment. *See United States v. Daulton*, 266 Fed. Appx. 381, 384 (6th Cir. 2008) (describing inextricably intertwined evidence as "uncharged conduct"). "[D]efendants are not entitled to a 'sanitized' recounting of the facts" that strips the events of the case from context or unfairly prevents the prosecution from "offer[ing] the jury a natural narrative of" what occurred. *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015); *see also United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (explaining that barring res gestae evidence would be tantamount to requiring the jury to "make its decision in a void -- without knowledge of the time, place, and circumstance of the acts which form the basis for the charge").

That is precisely what evidence concerning his efforts to

introduce Individual A to allegedly corrupt public officials accomplishes here; it provides necessary context to events of this case and avoids forcing the jury to make its decision in a vacuum. Mr. Higgins' own statements concerning public officials prompted the FBI's initial decision to investigate and record him. Through those efforts, law enforcement soon learned that, while attempting to ingratiate Individual A with these figures, Mr. Higgins also was engaging in an insurance fraud scheme using Individual A's business. It is entirely proper for the United States to explain its decision to investigate Mr. Higgins and to refrain initially from intervening in his fraudulent scheme. *United States v. Leasor*, 2020 WL 4937787, at *3-5 (W.D. Ky. Aug. 24, 2020) (permissible to introduce evidence that supervised release status prompted search at home and sparked investigation); *United States v. Baker*, 2019 WL 969521, at *4 (N.D. Ohio Feb. 28, 2019) (finding evidence admissible to explain why law enforcement took certain investigative steps).

As equally important, Mr. Higgins' own words and actions render inextricably intertwined (and thus admissible at trial) evidence concerning his fraud scheme and the public corruption investigation. First, in multiple recordings, he repeatedly emphasizes that his willingness to assist Individual A gain access to public officials is directly linked to the use of Individual A's company to facilitate his fraud scheme. In

7

short, he tacitly admits that Individual A's complicity in the fraud scheme is a quid pro quo for introductions to public officials. Second, Mr. Higgins claims – albeit falsely – that Individual A used the insurance proceeds that form the crux of the charges against him to make an illegal bribe payment to former city commissioner Joey Williams. Phrased differently, Mr. Higgins contends that he did not misuse the insurance money, but rather Individual A stole it to finance a bribe payment to a public official. Mr. Higgins' false exculpatory statement -- which invokes the public corruption investigation -- reflects directly on his guilt to the fraud and witness tampering charges alleged in the second superseding indictment. As such, Mr. Higgins' efforts to introduce Individual A to public figures are inextricably intertwined with his insurance fraud scheme and therefore are admissible.

**C.  Motion in Limine No. 3: The Liens on the Meeker Residence Constitute Either Res Gestate or Evidence of Motive**

Without citation to any legal authority, Mr. Higgins contends that evidence concerning hundreds of thousands of dollars in liens on the Meeker residence is irrelevant and serves only to reflect poorly on his character. His contentions lack legal and factual merit.

First, the liens are inextricably intertwined with, and provide necessary context to, the charged offense. The second

superseding indictment expressly alleges that these significant liens played a central role in Mr. Higgins' scheme to defraud his mortgage company and insurance carrier. At the time of the charged offenses, these obligations were tied directly to the house, crippling its value to Mr. Higgins. Indeed, in recordings, he acknowledges that his indebtedness on the Meeker residence prevented him from making any profits from a possible short sale of the home. Rather than spending the insurance funds as expected – namely, to restore a heavily indebted house – this defendant instead opted to divert the money for improper, personal gain, including: to travel, gamble, and open a fish restaurant. As case law makes evident, this debt does not relate to a defendant's character, but rather constitutes evidence inextricability intertwined with the charged offense.
*See, e.g., United States v. Ross*, 502 F.3d 521, 530 (6th Cir. 2007) (evidence of financial distress at time of offense directly probative of motive to commit fraud); *United States v. Kurlemann*, 2010 WL 3743639, at *3 (S.D. Ohio Sept. 10, 2010) (evidence of debts/financial condition as alleged in indictment constitute proper background evidence indicative of motive); *United States v. Roscoe*, 2011 WL 13143140, at *5 (N.D. Cal. Jan. 6, 2011) (finding evidence of "the severe financial strains that defendants and their company faced" provided context to the jury, established motive for the bank fraud, and therefore was

inextricably intertwined with the charged fraud crime).

Alternatively, the liens directly reflect on Mr. Higgins' motive (not his character) and therefore are admissible under Rule 404(b). It is well established that evidence of a defendant's financial distress – such as indebtedness, falling behind on mortgage payments, or money due and owing to other people – are admissible as probative of motive and intent. *See, e.g.*, Ross, 502 F.3d at 530 (financial distress evidence of motive for fraud); *United States v. Tager*, 788 F.2d 349, 353 (6th Cir. 1986) (upholding the trial court's admission of checks showing defendant's current financial condition as probative of his fraudulent intent); *United States v. Metallo,* 908 F.2d 795, 798 (11th Cir. 1990) (evidence of financial difficulties "admissible in fraud prosecutions to demonstrate knowledge, motive, intent, design and absence of mistake"). Nor does evidence of indebtedness or financial distress impugn a person's character and therefore unfairly prejudice him within the meaning of Rule 403. *See United States v. Reed*, 639 F.2d 896, 907 (2d Cir. 1981) (concluding that evidence of financial difficulty – specifically, delinquency in mortgage payments – reflects directly on motive and was not inherently prejudicial); *United States v. Inniss*, 2019 WL 6999912, at *11 (E.D.N.Y. Dec. 12, 2019) (same). Any prejudice from this evidence arises from its probative force concerning

the defendant's guilt.  Neither Rule 403 nor 404(b) exclude evidence on such grounds.  The liens therefore are admissible at trial.

D.  Motion in Limine No. 4: "Flip It" and "Reverse It" Demonstrates Motive, Intent, and Modus Operandi

During this investigation, Mr. Higgins provided guidance that, when confronted with claims of misconduct, a person should level similar allegations against his accusers, even pursuing lawsuits against them in the court system.  His statements bear a marked similarity to actions that he took in filing a 2020 lawsuit against two witnesses in this case.  Mr. Higgins' decision to file this meritless action years after the events in question and only after receiving discovery prompted the witness tampering and witness retaliation charges in the indictment.

Rather than addressing the admissibility of this self-described philosophy of "flipping it" and "reversing", Mr. Higgins instead opts to argue the merits of the witness tampering allegations against him.  At its core, he claims that the statements are not relevant because he lawfully filed a lawsuit against government witnesses.  Because in his estimation he has committed no crime, he proceeds even further, arguing that that any discussions concerning the lawsuit constitute improper character evidence.  His arguments lack merit.

First, Mr. Higgins' civil lawsuit forms the crux of the

11

witness tampering and witness retaliation charges in the indictment. That fact alone renders it directly relevant to the crimes charged against him and removes it from the ambit of 404(b) or character evidence. While his response attempts to justify his lawsuit and cast it in a lawful light, a defendant's pretrial claims of innocence do not somehow deprive the United States of its ability to present contrary evidence to the jury. Indeed, that is precisely the purpose of a criminal trial: for a jury to resolve the factual disputes before it and determine whether the defendant is guilty or not guilty of the charges against him.

In short, Mr. Higgins' claims of innocence do not render his 2020 lawsuit irrelevant to this case. It, in fact, is the very act of alleged harassment and retaliation upon which the witness tampering charges against him are premised. It is for the jury – not the Court – to determine Mr. Higgins' intentions and assess whether he pursued frivolous civil claims against two government witnesses to retaliate against them. His efforts to exclude evidence of the lawsuit should be rejected.

Second, Mr. Higgins' denials only confirm the probative nature and admissibility of his statements concerning "flipping it" and "reversing". Motive, intent, and modus operandi are directly relevant where, as here, a defendant denies his intention to commit the charged crimes. He has opened the door

to these statements because they tend to reflect his true motivations in filing the lawsuit – to retaliate against, and to deter future testimony of, these witnesses. *See United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004) (denial of guilt opens door to 404(b) evidence); *see also United States v. Suarez*, 617 Fed. Appx. 537, 542-43 (6th Cir. 2015) (discussing attempted witness tampering as a specific intent crime). This evidence does not concern the defendant's character, but rather directly reflects his intentions in filing a lawsuit against government witnesses – the conduct forming the crux of the witness tampering charges against this defendant.

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was served on defendant's counsel this 28th day of February 2021 via the Court's ECF System.

                        s/Brent G. Tabacchi
                        BRENT G. TABACCHI
                        Assistant United States Attorney