## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**United States of America**,

        *Plaintiff*,

**v.**                                       **Case No.   3:18-cr-186**
                                                **Judge Thomas M. Rose**

**Brian Higgins,**

        *Defendant*.

---

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART MOTION *IN LIMINE* NO. 3: ADMISSION OF *RES GESTAE* EVIDENCE, ECF 62, GRANTING MOTION *IN LIMINE* NO 1: EXCLUSION OF IRRELEVANT EVIDENCE AND ARGUMENT AT TRIAL, ECF 60, GRANTING MOTION *IN LIMINE* NO 2: REQUESTING ORDER DECLARING CERTAIN DEFENDANT'S STATEMENTS INADMISSIBLE HEARSAY, ECF 61, AND GRANTING MOTION *IN LIMINE* NO 4: SEEKING ADMISSION OF 404(B) EVIDENCE. ECF 63.**

---

Pending before the Court are Motion *in Limine* No 1: Exclusion of Irrelevant Evidence and Argument at Trial, ECF 60, Motion *in Limine* No 2: Requesting Order Declaring Certain Defendant's Statements Inadmissible Hearsay, ECF 61, Motion *in Limine* No. 3: Admission of *Res Gestae* Evidence, ECF 62, and Motion *in Limine* No 4: Seeking Admission of 404(B) Evidence. ECF 63. A hearing on the pending motions *in limine* was held March 10, 2021. At the conclusion of the hearing, the parties represented that they had no further submission to make on the questions presented, rendering them ripe for decision. The Court will deal first with the Government's Motion *in Limine* No. 3: Admission of *Res Gestae* Evidence. ECF 62.

I.      **Motion *in Limine* No. 3: Admission of *Res Gestae* Evidence, ECF 62**

A federal grand jury has charged defendant Brian Higgins with crimes including participation in a scheme to defraud an insurance company and his mortgage holder between 2014 and 2015. Specifically, the indictment alleges that, living in a residence that was financially under water, Higgins fraudulently diverted insurance money earmarked for repairs of this economically distressed home for a variety of improper purposes, including travel, building a new restaurant, and dining out.

The United States proposes to introduce at trial of purported "*res gestae*" or "inextricably intertwined" evidence concerning, among other things: how this matter came to the attention of law enforcement; why authorities took certain steps in investigating the fraud alleged in the indictment; and the existence of thousands of dollars in liens on Higgins' home that contributed to its financial distress. The Government argues that these items either provide background to the investigation or help complete the story of the events surrounding Higgins' alleged fraudulent conduct, and are thus inextricably intertwined with, or constitute *res gestae* of, the charged offenses and therefore are admissible. The Government urges the Court to rely upon *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) and *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015), for the proposition that "res gestae" materials, testimony and exhibits are admissible when they are bound up "with the charged offense or [if] the telling of [these other acts] is necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748; see also *Gibbs*, 797 F.3d at 424 (defendants are not entitled to a "sanitized" recounting of the facts, . . . and prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events.).

Federal Rule of Civil Procedure 401 extricates *res gestae* materials from the threads of

admissible evidence by asking if they are relevant to proving the offense charged. "[R]ecourse to *res gestae* has been derided by legal commentators for a century." *Commonwealth v. Cousar*, 638 Pa. 171, 219, 154 A.3d 287, 315 (2017) (citing 1 John H. Wigmore, *Evidence in Trials at Common Law* § 218 (1904) (depicting the term as "useless and vicious," while urging that "legal discussion sedulously avoid this much-abused and wholly unmanageable Latin phrase") ). It is an "ancient phrase [that] can be jettisoned, with due acknowledgement that it served an era in the evolution of evidence law." Id. at 723 (quoting 2 John W. Strong, *McCormick on Evidence* § 268 (4th ed. 1992)).[1]

    As the Sixth Circuit noted prior to *Hardy* and *Gibbs*,[2] "The phrase '*res gestae*' has long been not only entirely useless, but even positively harmful. It is useless because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in terms of that principle." *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1056–57 (6th Cir. 1983) (citing 6 J. *Wigmore Evidence*, § 1767 (J. Chadbourne rev. 1976)). Indeed, the *Haggins* panel continued, "The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admissibility of evidence as '*res gestae*.' It is probable that this troublesome expression owes its

---

1 See Fed. R. Crim. P. 26 (comment to 1972 Amendments) ("The first sentence is retained, with appropriate narrowing of the title, since its subject is not covered in the Rules of Evidence. The second sentence is deleted because the Rules of Evidence govern admissibility of evidence, competency of witnesses, and privilege."). The struck second sentence provided, "The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." See George H. Dession, *New Rules of Criminal Procedure*, 55:04 Yale L.J.694, at 703 (1946).

2 "Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc." 6 Cir. R. 32.1 Citing Judicial Dispositions; Effect of Published Decisions. Because an earlier panel recognized the Federal Rules of Evidence as abrogating the admissibility of *res gestae* evidence, the Court cannot recognize *Hardy* and *Gibbs*, or, for that matter, *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013), or *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000), as binding precedent. See *United States v. Smith*, No. 3:17-CR-025, 2018 WL 4468265, at *3-4 (S.D. Ohio Sept. 17, 2018).

existence and persistence in our law of evidence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking." *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983) (citing Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229, 229 (1922)).[3]

If *res gestae* still exists in evidence law, it is embodied in Rule 401, according to which, relevant evidence is admissible.[4] See *United States v. Drapeau*, 73 F. Supp. 3d 1086, 1093–94 (D.S.D. 2014)("the scope of relevant evidence under Federal Rules of Evidence 401 includes 'evidence providing the context in which the crime occurred, *i.e.*, the *res gestae*.'"). The first question in determining admissibility is relevancy. *Huddleston v. United States*, 485 U.S. 681, 687 (1988) ("Rules 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise."). See also *United States v. Smith*, No. 3:17-CR-025, 2018 WL 4468265, at *3–4 (S.D. Ohio Sept. 17, 2018) (Rose, J.). Determining relevancy untangles the intertwined admissible and inadmissible.

The United States requests permission to prove the following allegations at trial:

> During 2014, the Federal Bureau of Investigation (FBI) opened an investigation concerning allegations of public corruption occurring in the Dayton area. Mr. Higgins initially was not a subject or target of that matter. Rather, he inadvertently came to the attention of law enforcement through interactions that he had with a person identified herein as Individual A.

---

3 According to Black's Law Dictionary: "[T]he phrase has frequently served both to let in utterances which in strictness were not admissible and to exclude utterances which might well have been admitted. And frequently also its indefiniteness has served as a basis for rulings where it was easier for the judge to invoke this imposing catchword than to think through the real question involved. The phrase is antiquated. By modern judges it is being gradually discarded. It is superfluous, and serves only to obscure the logic of the rules. It should be left to oblivion." *Res Gestae*, Black's Law Dictionary (11th ed. 2019) (quoting John H. Wigmore, A Students' Textbook of the Law of Evidence 279 (1935)).

4 Rule 401 is not a standalone rule. Rule 402 says that the general admissibility of relevant evidence must yield to other Rules. See Fed. R. Evid. 402 ("Relevant evidence is admissible unless ... "these rules" "provide[ ] otherwise."). *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020), reh'g denied (Dec. 30, 2020).

During summer 2014, Mr. Higgins met with Individual A to discuss the above-described insurance claim and possible repair work on the Meeker Residence. During their conversations, Mr. Higgins indicated that he had access to public officials in the Dayton area, who, in return for receiving improper benefits, would be willing to assist Individual A obtain work with various Government entities. During their interactions, Mr. Higgins also suggested that he intended to fraudulently divert money from the insurance claim for improper purposes. In agreeing to meet with Mr. Higgins, Individual A had not anticipated that their conversations would turn to illegal activity. Although Individual A had not recorded this interaction, Individual A alerted the FBI to its substance.

Based on this tip, over the next several months, FBI began to consensually record Mr. Higgins and his interactions with various individuals. During these recordings – portions of which the United States intends to introduce at trial – Mr. Higgins and other individuals engaged in conversations that mixed discussions of the fraudulent insurance claim with efforts to curry improper favor with public officials. These intertwined schemes continued for several months without disruption from investigators.

ECF 62, PageID 384-86.

The Government does not attempt in its motion to describe how any of this is relevant to the elements it must prove at trial. This being the case, *res gestae* evidence will not be allowed.

Alternatively, the Government seeks admissibility of the existence of the liens under Rule 404(b), asserting they are directly probative of Higgins's motive and intent. Rule 404(b) favors admissibility; it is a "rule of inclusion, not exclusion." *United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996). Under this provision, "[e]vidence of other crimes, wrongs, or acts . . . may [] be admissible . . . as proof of motive, . . . intent, . . . knowledge . . . or absence of mistake or accident." Fed. R. Evid. 404(b).

To admit evidence under this rule, a court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior acts occurred; (2) determine that the other act

evidence is admissible for a proper purpose, i.e., to establish intent, lack of mistake, etc.; and (3) consider if the evidence satisfies Federal Rule of Evidence 403. See *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001). The evidence concerning the liens on the Meeker residence satisfies these standards.

First, competent evidence proves that the liens occurred – specifically, court judgments and other public documents recording their existence on the property when Higgins filed the insurance claim and used the funds for other purposes. Second, evidence concerning the liens serves the purpose of establishing Higgin's intent and motive. When a defendant "pl[eads] not guilty to a [specific intent] offense . . ., he put his general intent and specific intent at issue" and therefore "open[s] the door" to the admission of other acts evidence under Rule 404(b). *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004); see *United States v. Stephens-Miller*, 582 F. Appx. 626, 636 (6th Cir. 2014) (mail fraud is a specific intent crime).

Here, the indebted nature of the Meeker residence – including the liens – provides insight to his motive and intent when filing the insurance claim. With the Meeker residence heavily under water, on the brink of foreclosure, and of little liquid value to him, Higgins had incentive to improperly divert the insurance proceeds rather than using them to repair the residence. Indeed, the existence of these debts arguably provides insight into his intentions when he filed the claims – he potentially viewed the funds as a personal windfall to spend as he saw fit rather than restoring the value of the property for his mortgage holder. As such, evidence concerning the liens has a proper purpose. See *Ross*, 502 F.3d at 530 (evidence of financial distress at time of offense directly probative of motive to commit fraud); *Kurlemann*, 2010 WL 3743639, at *3 (same).

Third, the evidence is proper under Rule 403, which favors admissibility of materials. See *United States v. Jones*, 554 F. App'x 460, 473 (6th Cir. 2014) (White, J., concurring) ("Rule 403

favors admissibility"). To warrant exclusion under this rule, the probative value of evidence must be substantially outweighed by its unfairly prejudicial effect. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee Notes. Evidence is not unfairly prejudicial merely because it has an adverse effect on the defense; unfair prejudice occurs only when "the jury responds negatively to some aspect of the evidence unrelated to its tendency to make the contested fact more or less probable." *United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir. 1988).

Here, the liens have the potential to establish Higgins' motive and intent. While Higgins may claim that he did not purposefully misspend the insurance company's funds, evidence to the contrary is not "unfair" prejudice. See *Savinovich*, 845 F.2d 834, 837. Thus, evidence concerning the liens on the Meeker residence at the time of the insurance claim is admissible to establish motive and intent under Rule 404(b). Thus, Motion *in Limine* No. 3: Admission of *Res Gestae* Evidence. ECF 62, will be denied with regard to purported *res gestae* evidence, but granted with regard to the liens on the Meeker residence at the time of the insurance claim.

## II. Motion *in Limine* No 1: Exclusion of Irrelevant Evidence and Argument at Trial, ECF 60

The Government's Motion *in Limine* No 1: Exclusion of Irrelevant Evidence and Argument at Trial, ECF 60, seeks an order, precluding Defendant Brian Higgins from presenting (1) information that he claims to possess concerning politicians in Chicago awarding a contract to a convicted sex offender, which he variously has styled as "Code of Silence," "What About the Children," or "Save the Children"; (2) his efforts to compel law enforcement in Dayton to secure a proffer for him with FBI agents in Chicago concerning "Code of Silence"; (3) the penalties affixed to his charge; (4) the number of days that have passed from his arrest to his trial date; (5)

circumstances surrounding his arrest at the FBI in spring 2019; and (6) disparaging, personal attacks on members of the prosecution team.

In its response, the Defense concedes that many of Higgins uncounseled filings are irrelevant to the extent that they concern the "Code of Silence;" "What about the Children;" compelling the FBI to secure a meeting with him; the number of days that have passed from his arrest to the trial date, disparaging comments regarding members of the prosecution team and the statutory penalties of the charged offenses. Therefore, the Defense concedes that testimony, evidence or argument regarding these issues is irrelevant to the charges set-forth in the indictment.

However, the Defense does not concede that the circumstances surrounding Higgins' arrest at the FBI offices in Centerville, Ohio on April 30, 2019 are irrelevant and immaterial. The Defense contends that it is somehow relevant that a confidential informant, who was in regular and constant contact with Higgins during the months leading up to his arrest, could have effectuated a meeting with Higgins for his arrest. Instead, Defense wants to highlight that Higgins was "lured" to the FBI office in Centerville, not for the purported reasons Higgins thought (sharing information regarding public corruption in Chicago), but to arrest him on an Indictment filed 16 months and 17 days prior.

Higgins asserts the probative value of the events around his arrest go to his state of mind at the time of his arrest, and that this is somehow relevant to his defense. Unless Higgins were asserting the defense of withdraw from a conspiracy, his state of mind at the time of his arrest is not at issue. Presenting testimony at his trial regarding his arrest would only confuse the issues, mislead the jury and unduly delay the trial. Fed. R. Evid. 403.

State of mind at time of arrest is not an element the Government must prove, nor an element of a defense Higgins asserts. Relevant evidence is defined in Fed. R. Evid. 401 as evidence having

"any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. While relevancy is an extremely broad concept. *Hinkle v. Ford Motor Co*., 2012 WL 4049477, \*1-2 (E.D. Ky. Sept. 13, 2012), evidence must relate to a fact of consequence.

In a criminal case, a fact is "of consequence" if it makes it more or less likely that the defendant committed the charged conduct. *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020). Courts do not require that each piece of evidence directly prove or disprove an element of the offense. Id. (citing 1 MCCORMICK ON EVID. § 185 (8th ed.) ("[S]ome evidence that is merely ancillary to evidence that bears directly on the issues may be admissible."). However, evidence must at least be "a step on one evidentiary route to the ultimate fact." Id. (quoting *Old Chief v. United States*, 519 U.S. 172, 179 (1997). Higgins' state of mind at the time of his arrest fails to meet even the lenient "step on one evidentiary route" standard.

The Court will not entertain a trial on completing theories regarding how the charges against Defendant came to the Government's attention. Just as the Court will not entertain the Government's contention that "the jury should not be required to guess concerning how Mr. Higgins came to the attention of law enforcement," ECF 62, PageID 388, neither will it put before jurors the irrelevant tale of how Higgins was arrested. To hold otherwise would be contrary to the untold number of cases, including this one, where the Government would prefer that a confidential informant remain confidential. Finding such information relevant would entail putting evidence before the jury upon which it needs to make no finding. Thus, Motion *in Limine* No 1: Exclusion of Irrelevant Evidence and Argument at Trial, ECF 60, will be granted.

## III.     Motion *in Limine* No 2: Requesting Order Declaring Certain Defendant's Statements Inadmissible Hearsay, ECF 61

In its Motion *in Limine* No 2, the United States seeks an order precluding Higgins from

introducing at trial during the cross-examination of Government witnesses any statements that Higgins made in recordings federal agents obtained of conversations between Higgins and other individuals concerning his involvement in the insurance fraud scheme alleged in the indictment. The Government asserts that Higgins made both inculpatory admissions during these recordings, as well as self-serving statements concerning his illegal activities. The Government seeks to exclude the self-serving statements.

The Government may offer during its case-in-chief a defendant's statements to its witnesses because such statements constitute non-hearsay admissions of a party opponent. See Fed. R. Evid. 801(d)(2)(A); *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) (defendant's statements to Government witness admissible under party opponent rule); *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 3 801(d)(2)(A) authorized the Government to question [the] Postal Inspector [] on direct examination regarding certain statements made by [the defendant] because of [the defendant's] status as a party opponent"); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (same proposition).

"Rule 801(d)(2), however, does not extend to a party's attempts to introduce his or her own statements through the testimony of another witness" during cross-examination. *McDaniel*, 398 F.3d at 545 (holding defendant could not seek to introduce his own statements through cross-examination of Government agent). "Indeed, if such statements were deemed admissible [through cross-examination], parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." Id.; see also *Ortega*, 203 F.3d at 682. In short, a defendant may not introduce during cross-examination of a Government witness his statements to that witness because such utterances constitute inadmissible hearsay. See *Ford*, 761 F.3d at 652; *McDaniel*, 398 F.3d at 345.

If a defendant wishes "to rebut [his] own admissions," he may "testif[y] at trial." *Ford*, 761 F.3d at 652.

Higgins's response acknowledges the strictures of the Rules of Evidence, and agrees to not engage in improper cross-examination. Higgins asserts that exceptions noted in Fed R. Evid. 803 et seq., may be applicable, and will be raised on a case by case basis.

Thus, Government's Motion *in Limine* No 2: Requesting Order Declaring Certain Defendant's Statements Inadmissible Hearsay, ECF 61, will be granted.

## IV. Motion *in Limine* No. 4: Seeking Admission of 404(b) Evidence, ECF 63

In Motion *in Limine* No. 4, the Government seeks a ruling of admissibility regarding certain Rule 404(b) evidence. The proposed evidence is contained in recorded conversations where Higgins explained that, if confronted with a claim of wrongdoing, a person should level similar assertions against his accusers, even pursuing lawsuits against them in the court system. Styling this technique as "flipping it" and "reversing it." Higgins counseled that it was a way to handle an individual who reported allegations of misconduct to Government authorities.

The Government asserts Higgins' statements are directly probative of his intentions in filing civil lawsuits against two individuals who he knew planned to testify against him in his case. The Government asserts this recording provides a roadmap to the attempted witness tampering and witness retaliation charges alleged against Higgins in Counts Five through Eight of the Second Superseding Indictment. Because these statements reveal his intent, plan and mode of operation concerning charges in this case, this evidence satisfies Federal Rule of Evidence 404(b) and is admissible at trial.

During late 2014, while investigating the fraud charges that led to the indictment in this case, law enforcement captured a consensually recorded conversation in which Higgins detailed

his *modus operandi* for combating allegations of misconduct. In this recording, Higgins counseled a person identified as "Individual B" how to address complaints that a woman had directed to the City of Dayton about Individual B's business practices.

Higgins instructed Individual B to "flip it [i.e., level the same complaint] on her." Opining that they were playing "chess not checkers," Higgins encouraged Individual B to file a defamation lawsuit against the woman. He suggested lobbing accusations at her to force her disqualification from business with the City of Dayton. Emphasizing the need to "flip it and reverse it" [i.e., make similar allegations] against the complainant, he discussed efforts to sue and depose the woman in a manner that painted her in a false light. He reiterated that they had to play "chess" and, in this manner, they could combat the complaint.

The witnesses at issue came to Higgins's attention after a federal grand jury indicted him for mail fraud in late 2018. Federal agents arrested him on those charges the following year. During 2019, the United States produced discovery to Higgins, including a series of consensually recorded videos. These recordings revealed the identity of several potential witnesses against Higgins – including Individual A and Individual B.

During March 2020 -- after receiving the discovery materials -- Higgins filed *a pro se* civil lawsuit in state court against Individual A and Individual B. (Through various filings in the state case, Higgins identified these individuals as potential Government witnesses in his criminal trial). His civil lawsuit alleged that Individual A and Individual B had breached a contract with him over six years ago and therefore owed him various compensatory and punitive damages.

Higgins' complaint accused Individual A and Individual B of committing fraud similar to that with which he is charged in this case. Through the civil proceedings, Higgins attempted to compel production of discovery, to take depositions and otherwise encumber Individual A and

Individual B until the state court placed a stay on that matter. During late 2020, based on these events, a federal grand jury indicted Higgins for multiple counts of attempted witness tampering and witness retaliation targeting these individuals.

Because the recording details a scheme to sue and silence a complainant, it is probative of whether Higgins intended to harass and to retaliate when he filed his March 2020 lawsuit against the Government witnesses. The recording also arguably tends to establish a common scheme, plan, or *modus operandi* that Higgins' deploys to improperly combat allegations leveled against him. Because the recording advances the proper purposes of Rule 404(b), it is admissible at trial.

Rule 404(b) favors admissibility; it is a "rule of inclusion, not exclusion." *United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996). Under this provision, "[e]vidence of other crimes, wrongs, or acts . . . may [] be admissible . . . as proof of intent, . . . knowledge . . . or absence of mistake or accident," Fed. R. Evid. 404(b), as well as common scheme, plan, or modus operandi. See *United States v. Yu Qin*, 688 F.3d 257, 262-63 (6th Cir. 2012) (Rule 404(b) permits admission of evidence establishing "participation in a common scheme or plan"). To admit evidence under this rule, a court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior acts occurred; (2) determine that the other act evidence is admissible for a proper purpose, i.e., to establish intent, lack of mistake, etc.; and (3) consider if the evidence satisfies Federal Rule of Evidence 403. See *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001); *Yu Qin*, 688 F.3d at 262.

The recording satisfies this standard. First, competent evidence proves that Higgins' statements occurred. Specifically, video recordings captured him explaining his philosophy for countering allegations of misconduct.

Second, evidence concerning these statements serves proper purposes – namely,

establishing Higgin's intent, plan, or mode of operation. To prove the witness tampering allegations in this case, the United States must demonstrate that Higgins acted either with intent to harass or with intent to retaliate against the identified Government witnesses. He has pleaded not guilty to these charges, thereby placing his intent at issue and opening the door to the admission of other act evidence. See *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004); see *United States v. Suarez*, 617 F. Appx. 537, 542-43 (6th Cir. 2015) (discussing attempted witness tampering as a specific intent crime).

The recordings are relevant to the issue of intent. Higgins prior advice counseled to "flip" allegations on accusers and "reverse" their claims by pursuing litigation against them. Here, witnesses provided information that Higgins engaged in an insurance fraud scheme and planned to testify against him. Upon learning this information, Higgins filed a civil complaint against these individuals, making near identical allegations concerning them. His actions of flipping and reversing allegations against complaining witnesses reflect directly on his intent to harass and retaliate against these individuals. See *United States v. Headley*, 2000 WL 1359620, at *6 (6th Cir. Sept. 11, 2000) (recording in which defendant detailed planned assault of opposing party's counsel in prior litigation admissible under Rule 404(b) to show intention to tamper with a witness in current criminal case). His statements are equally probative of a common scheme, plan or *modus operandi*; Higgins claimed to employ a "chess" not "checker"-like strategy to retaliate and harm individuals that report potential misconduct to Government authorities. In sum, the recording is relevant to issues in this case – namely, the intentions behind Higgins' civil suit against the United States' witnesses.

Third, the evidence is proper under Rule 403, which favors admissibility of materials. See *United States v. Jones*, 554 F. App'x 460, 473 (6th Cir. 2014) (White, J., concurring) ("Rule 403

favors admissibility"). To warrant exclusion under this rule, the probative value of evidence must be substantially outweighed by its unfairly prejudicial effect. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee Notes. Evidence is not unfairly prejudicial merely because it has an adverse effect on the defense; unfair prejudice occurs only when "the jury responds negatively to some aspect of the evidence unrelated to its tendency to make the contested fact more or less probable." *United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir. 1988).

Here, the recording tends to establish Higgins' intent and plan in filing the lawsuit. To be sure, this evidence may undermine his likely claim that he filed the lawsuit in good faith more than six years after the events giving rise to it. That fact, however, is not "unfair" prejudice. See *Savinovich*, 845 F.2d 834, 837. Rather, this is the very reason that this material is admissible. As such, the recordings are admissible under Rule 404(b), and Motion *in Limine* No. 4: Seeking Admission of 404(b) Evidence, ECF 63, will be granted.

## V.     Conclusion

Motion *in Limine* No. 3: Admission of *Res Gestae* Evidence, ECF 62, is **GRANTED IN PART** and **DENIED IN PART.** *Res gestae* evidence will not be allowed, but evidence concerning the liens on the Meeker residence at the time of the insurance claim will be allowed to the extent it shows motive. Motion *in Limine* No 1: Exclusion of Irrelevant Evidence and Argument at Trial, ECF 60, is **GRANTED.** Motion *in Limine* No 2: Requesting Order Declaring Certain Defendant's Statements Inadmissible Hearsay, ECF 61, is **GRANTED.** Motion *in Limine* No. 4: Seeking Admission of 404(b) Evidence, ECF 63, is **GRANTED.**

**DONE** and **ORDERED** in Dayton, Ohio on Tuesday, March 16, 2021.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE