UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  v.  **BRIAN HIGGINS,**  Defendant. | Case No. 3:18-CR-00186  JUDGE THOMAS M. ROSE  **GOVERNMENT'S MOTION FOR A *DAUBERT* HEARING** |

The Government hereby moves for a short *Daubert* hearing to enable the Court to assess the reliability and relevance of the planned opinion testimony of putative defense expert Chris A. Johnson. While Mr. Johnson's anticipated testimony appears to be excludable based on the face of his report, the Government submits that a brief evidentiary hearing will assist the Court and the parties in developing the record as to the sufficiency of his qualifications and the relevance and reliability of his conclusions.

**I.      BACKGROUND**

   **A.      Factual Background**

On March 31, 2021, defense counsel provided the Government with the report of Chris A. Jordan, which details "expert opinions and analysis regarding the . . . insurance claim that involved covered water damage to the insured residence located at 7240 Meeker Creek Dr., Dayton, Ohio 45414." (*See* Ex. A, Johnson Report, at 1.) In the report, Mr. Johnson notes that his "qualifications to express these opinions include over 35 years of education, training and experience in the insurance industry, the details of which can be found in my attached Curriculum Vitae." (*See id.*) The report goes on to set forth nine separate "opinions held," which Mr. Johnson claims "are made to within a reasonable degree of certainty in insurance claims practices, standards and customs."

(*See id.* at 3-11.) These opinions include that Mr. Higgins followed the terms and conditions of certain mortgage documents related to the residence at 7240 Meeker Creek Drive and that any inference that Mr. Higgins was involved in insurance fraud is not supported by the records that Mr. Johnson reviewed in preparing his report. (*See id.* at 7-9.)

In addition to Mr. Johnson's report, defense counsel provided the Government with Mr. Johnson's Curriculum Vitae (*see* Ex. B), a list of the cases in which he has previously testified as an expert (*see* Ex. C), and a list of documents he relied on in preparing his report (*see* Ex. D).

    **B.**    **Legal Framework**

Federal Rule of Evidence 702 limits the circumstances under which an expert witness may testify. *See United States* v. *Cunningham*, 679 F.3d 355, 378 (6th Cir. 2012) ("Rule 702 of the Federal Rules of Evidence provides the touchstone for expert testimony."). Specifically, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As the Sixth Circuit has recognized, Rule 702 and related Supreme Court decisions – namely, *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993), and *Kumho Tire Co.*

v. *Carmichael*, 526 U.S. 137 (1999) – "have placed the district courts in the role of 'gatekeeper,' charging them with evaluating the relevance and the reliability of proffered expert testimony with heightened care." *Surles ex rel. Johnson* v. *Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007); *see also Cunningham*, 679 F.3d at 380 ("district court acts 'in the role of "gatekeeper"' and must 'evaluat[e] the relevance and reliability of proffered expert testimony with heightened care.'" (alteration in original)).

In discharging its gatekeeping function, a district court may conduct a so-called *Daubert* hearing in order to develop the record. While a *Daubert* hearing is not necessarily mandatory, "a district court should not make a *Daubert* determination when the record is not adequate to the task." *Jahn* v. *Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000) (remanding because "record need[ed] to be further developed to make . . . adequate *Daubert* determination"); *see also Busch* v. *Dyno Nobel, Inc.*, 40 F. App'x 947, 961 (6th Cir. 2002) ("[W]e direct that the district court conduct a *Daubert* hearing before retrial in order to meet the full gate-keeping responsibility required under Rule 702 and *Daubert* and its progeny.").

## II. ARGUMENT

The Government respectfully submits that a *Daubert* hearing should be held to test the qualifications of Defendant's proffered expert, as well as the relevance and reliability of his numerous opinions. Based on his report and the accompanying documentation, it appears that the expert's planned testimony should be excluded, but the Government believes that questioning of the expert at a brief hearing will shed further light on his credentials and conclusions and clarify the relevance and reliability analysis that the Court must undertake as evidentiary gatekeeper.

*First*, a *Daubert* hearing would illuminate the expert's specific qualifications, which are a prerequisite for the admissibility of his testimony under Rule 702. *See Cunningham*, 679 F.3d at

3

379 (describing qualification of expert "by 'knowledge, skill, experience, training, or education'" and "first hurdle to clear under Rule 702"). Although Mr. Johnson's *Curriculum Vitae* notes that he "is a licensed attorney and claims professional with over 30 years of experience" (*See* Ex. B at 1), it is unclear from his lengthy resume whether Mr. Johnson has any knowledge, skill, experience, training, or education specific to federal criminal actions involving allegations of mail fraud related to insurance claims. Additionally, based on the list of cases in which he has served as an expert witness, there is nothing to indicate that Mr. Johnson has previously been qualified to offer expert testimony in a federal criminal trial; his prior experience appears exclusively to involve civil disputes between private parties. (*See* Ex. C.) Accordingly, further inquiry into the Mr. Johnson's experience at an evidentiary hearing is appropriate. *See Cunningham*, 679 F.3d at 379 ("Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience"); *see also United States* v. *Cooks*, 589 F.3d 173, 180 (5th Cir. 2009) (witness not qualified to serve as expert on mortgage fraud based on "limited experience as white collar fraud investigator and general certification as a fraud examiner").

*Second*, a *Daubert* hearing would clarify the purported relevance of the expert's planned testimony. On the face of the report, Mr. Johnson's opinions appear to be irrelevant or otherwise impermissible. For example, Mr. Johnson's opinions seem to hinge in part on his interpretation of certain contractual documents, including the mortgage documents. But courts have repeatedly recognized that contract law is not necessarily relevant to federal fraud charges. *See, e.g.*, *United States* v. *Rathburn*, 771 F. App'x 614, 626 (6th Cir. 2019) ("Michigan contract law is irrelevant to the federal charge of wire fraud."); *United States* v. *United States* v. *Dees*, 34 F.3d 838, 843 (9th Cir. 1994) ("The binding nature of verbal agreements was an issue irrelevant to mail and wire

fraud."); *United States* v. *Karam*, 2011 WL 806673, at *4 (E.D. Mich. Mar. 2, 2011) ("[F]or purpose of charging Defendant with bank fraud, it is irrelevant whether Defendant signed the mortgage agreement with MCB or was in privity of contract with either MCB or Crystal Creek North."). A hearing into the precise scope of Mr. Johnson's planned testimony would assist the Court in confirming whether there is any relevance to his opinions, which turns on Defendant's intent to defraud and not on a non-party's assessment of the meaning of contractual terms.

*Third*, a *Daubert* hearing should be ordered to develop an adequate record on the reliability of Mr. Johnson's conclusions. Mr. Johnson's report does not detail in any meaningful way the specific basis for his opinions; he merely offers conclusory assertions that these opinions are based on industry practice and customs. Moreover, based on his list of documents reviewed, it does not appear that Mr. Johnson, in formulating his conclusions, has reviewed all evidence in this case, including critical evidence of fraudulent intent (such as recorded calls of Defendant). Given the paucity of concrete indications of reliability in his report, additional questioning is required to determine whether Mr. Johnson's opinions rest on a sound enough foundation to be brought in front of the jury. *See United States* v. *Lupton*, 620 F.3d 790, 799 (7th 2010) ("Greenberg's lack of methodology—he simply read the statutes and discussed how he thought they might apply—as well as the absence of any data—such as how Wisconsin courts have applied the statutes, or how often situations such as Lupton's arise—support the district court's second Rule 702 finding that Greenberg's testimony was insufficiently reliable to be admitted.").

//

//

//

//

### III. CONCLUSION

For the foregoing reasons, the Court should hold a *Daubert* hearing to test the putative defense expert's qualifications and the relevance and reliability of his opinions.

Dated: April 30, 2021

        Respectfully submitted,

        VIPAL J. PATEL
        ACTING UNITED STATES ATTORNEY

        s/George Painter
        GEORGE PAINTER (0097271)
        Assistant United States Attorney
        200 West Second Street, Suite 600
        Dayton, OH 45402
        (937) 225-2910
        Rob.painter@usdoj.gov

### **CERTIFICATE OF SERVICE**

I hereby certify that, on April 30, 2021, a copy of the foregoing was served on defense counsel via the Court's electronic filing system.

        s/George Painter
        GEORGE PAINTER